## BEALL'S LESSEE *vs.* HOLMES.

JUNE.

APPEAL from *Montgomery* county court. Ejectment for a tract of land in *Montgomery* county, called *Lay Hill.* The defendant, (the appellee,) pleaded the general issue. The opinion of the court below was given on a case stated, which presented but one question, that is, what was the true construction of a devise in the will of *James Beall,* executed in the year 1723, under which the lessor of the plaintiff claimed? The county court, [*Ridgely* and *Kilgour,* A. J.] decided, that the devisees took an estate for life only, and gave judgment for the defendant, and the plaintiff appealed to this court. The devise is sufficiently recited in the opinion delivered by this court.

A by his will having the following introductory clause, "As touching my worldly estate wherewith it has pleased God to bless me in this life, I give, devise and dispose of, in the following form and manner, viz." devised and bequeathed as follow: "*Imprimis* I give and bequeath to my eldest son B. all that tract of land called," &c. "*Item.* I give and bequeath to my son C, all that tract of land called." &c. "*Item.* I give and bequeath to my son

D. that part of a tract of land called," &c. *Item.* I give and bequeath to my sons E and F, all that tract of land called *Lay Hill,* to be equally divided betwixt them. *Item* I give and bequeath to my son G, part of a tract of land called," &c. "*Item.* I give and bequeath to my daughter H, part of a tract of land called," &c. He gives her also 30£ sterling, and bequeaths 10£ sterling a year to a minister. "*Item,* I give and bequeath to my loving wife I, three negroes, viz." &c. "and my new dwelling plantation during her natural life. *Item.* I give and bequeath all the rest of my personal estate, viz. goods, chattels and negroes, to be equally divided amongst my children."—*Held,* that E and F took a life estate only in the tract of land called *Lay Hill.*

The cause was argued at the last June term before Buchanan, Earle, Martin, Dorsey, and Stephen, J.

*Jones* and *Key*, for the Appellant, enumerated the several clauses in the will of *James Beall*, on which they relied, and which are particularly set forth in the opinion delivered by the court, and stated that the question was, whether the devisees under the will took an estate in fee or for life. They contended that the intent of the testator was to be gratified, if it sufficiently appeared from the will, and that the intent to give a fee was manifest from the whole will. 1. From his reciting in the preamble that he meant to dispose of all his estate. 2. From the concluding bequest of all the rest of his *personal estate*, showing that he had disposed, (as he believed,) of all his *real estate*. 3. From his omitting words of inheritance in all the devises to his children, even in that to his eldest son. 4. From his inserting words of limitation in the devise to his wife—showing, that where he gave generally he meant to give in fee, and that where he meant to give for life, he thought it necessary to limit the estate by express words. The authorities to which they referred, and those also relied on by the counsel for the appellee, being noticed and commented upon in the opinion delivered by the court, it is unnecessary to notice them here.

*T. B. Dorsey*, (Attorney General,) and *Magruder*, for the Appellee.

*Curia ad. vult.*

Buchanan, Ch. J. at this term delivered the opinion of the court. It appears that on the 21st of November 1723, *James Beall* made his will, in which, immediately after an introductory clause in these words, "as touching my worldly estate wherewith it has pleased God to bless me in this life, I give; devise and dispose of, in the following form and manner, viz." he proceeds, "*Imprimis*, I give and bequeath to my eldest son *John Beall*, all that tract of land called *Rover's Content*, and another tract of land called *Fiffe*, and all that part of a tract of land called *Good Luck*, which lies on the east side of the Cabin Branch; and another tract of land called *Drumaldree*. *Item*. I give and bequeath to my son *Nathan Beall*, all that tract of land, called *Easy Purchase*, and a tract of land thereunto adjoining, called *Addition to Easy Purchase*. *Item*. I give

and bequeath to my son *James Beall*, that part of a tract of land called *Good Luck*, which lies on the west side of Cabin Branch, and a tract of land called *Lonehead*. *Item*. I give and bequeath to my sons *Robert Beall* and *Joseph Beall*, all that tract of land called *Lay Hill*, to be equally divided betwixt them. *Item*. I give and bequeath to my son *Zephaniah Beall*, part of a tract of land called *Allison's Park*, and another tract of land called *Cooper*. *Item*. I give and bequeath to my daughter *Sarah Beall*, part of a tract of land called *Beall's Manor*." He gives her also £30 sterling, and bequeaths £10 sterling a year to a minister, and then goes on—"*Item*. I give and bequeath to my loving wife *Sarah Beall*, three negroes, viz. *Dogon*, *Hocketty* and *Peak*, and my now dwelling plantation, during her natural life," and adds a residuary clause in these words: "*Item*. I give and bequeath all the rest of my personal estate, viz. goods, chattels and negroes, to be equally divided amongst my children." That *James Beall*, the testator, died seized in fee simple of all the lands mentioned in the will, and that *John Beall*, one of the devisees, (under whom the defendant claims,) was his heir at law. And the question is, whether *Robert Beall* and *Joseph Beall* took an estate for life or in fee in the tract of land called *Lay Hill?*

It is an established rule of law, "that express words of limitation, or words tantamount, are necessary in a devise to pass an estate of inheritance." But in the construction of a will, the intention expressed by the testator, to be collected from the whole instrument, by comparing and considering the different parts together, if it be consistent with the rules of law, in relation to the nature and operation of the estate devised, must prevail, giving effect, if possible, in the exposition, to all the words of the will; and being supposed to be made when the testator is *in extremis*, and *inops concilii*, it is not necessary that technical terms, or any particular form of words, should be used to convey his meaning. Upon this principle it has long been settled, that the word "*heirs*" need not be used in a will to create an estate in fee, but that any other words, which sufficiently show the intention of the testator, to give to the devisee the whole of his interest in the thing devised, will have the same effect; as a devise to one in fee simple, or for ever, or to a man and his successors, or his blood, or to a person ge-

merely to give and sell, &c. which he could not do without having a fee in the land.

An "estate in land," is defined to be "such interest as the tenant hath therein." 2 *Blk. Com.* 103. Hence it is settled by an uninterrupted series of adjudications from an early period of juridical history down to the present day, that the word "*estate*," in a devise, is equivalent to words of limitation, and sufficient to pass the fee simple; when not restricted by other words, nor appearing to be used by the testator, as descriptive only, of the local situation of the land devised; and so (upon the same principle,) will any other words having the same import. But though the intention of the testator is to govern in the construction of a will, yet that intention must, in the language of Mr. Justice *Wilmot*, in *Baddeley vs. Leppingwell*, 3 *Burr.* 1541, be collected "*ex visceribus testamenti;*" it must be gathered, not from what he has *omitted to say*, but from the words which he *has used*, and when so ascertained, and not otherwise, shall prevail, if there be also found in the *viscera* apt words to effectuate it. Upon this same principle of giving effect to the intention of a testator, manifested by the expressions contained in his will, it is now well settled, that a general devise of land, charged with a gross sum, or with debts and legacies, to be paid at all events by the devisee, and not out of the rents and profits, will pass the fee, on the ground, that the devise being intended for the benefit of the devisee, the testator must have meant to give him such an estate as he could not lose by; and therefore, as, if he should chance to die before he received from the land what he had paid, he would be a loser, it was clearly the intention of the testator to give him *more* than an estate *for life*, which, there being no words of restriction, could only be a fee simple. So also will a general devise of land, with a charge upon the devisee of the payment of a perpetual annual sum, or of an annuity for the life of the annuitant, &c. In the first case, because the charge being perpetual, the testator must have intended the fund to be perpetual also, and consequently meant to give the fee; and in the latter, because the annuity being of uncertain duration, requires an estate in fee to support it; and every devise being intended for the benefit of the devisee, the testator must in such a case necessarily mean to give him the inheritance. Upon the same ground of intention, it has

1824.

Beall
vs
Holmes

been held, that if there be a devise of land to one general-ly, with remainder over upon a limited contingency, as upon his dying under the age of twenty-one years, the first devisee will take an estate in fee simple, upon the principle, as said, that the devise over be-ing limited only upon the contingency of his dying during his minority, the necessary implication is, that he intended to give him an absolute estate in fee, if he should attain his full age. But an heir at law can only be disinherited by express words or necessary implication, his title being founded on the law, (which is certain,) and can-not therefore be defeated by conjecture. Hence it is, that a devise of land, without words of limitation, or any other words being added, from which an intention to give an es-tate of inheritance can be clearly collected, passes only a life estate to the devisee, such a general devise importing *in law* an estate for life. Upon some one or more of these principles, the different cases in the books will be found to have turned, where the question has been whether a devi-see took an estate of inheritance, or for life only. And in construing wills, though there are scarcely two in which the same expressions are used, yet regard should always be had to general rules of construction, established by adjudg-ed cases.

In the case before us, it has been contended with much zeal, and great ingenuity, that *Robert Beall* and *Joseph Beall* took an estate in fee simple, under the devise to them, of the tract of land called *Lay Hill*, upon the principle, that the intention of the testator, to be collected from the whole of the will taken together, must prevail; and the main argument is founded upon the introductory clause of the will, "as touching my worldly estate, wherewith it has pleased God to bless me in this life, I give, devise and dis-pose of, in the following form and manner, viz." the devise to *Robert* and *Joseph Beall*, being a naked *general* devise of all that tract of land called *Lay Hill*, to be equally di-vided between them, without any words of limitation or any other words added—on the ground that the introduc-tory clause manifests an intention in the testator to have disposed of the whole of his estate; but it will be seen, on examination, that the argument drawn from the introduc-tory clause alone, is not sustained by the *English* authori-ties. Where there are words in a devise, which would be

1824.

Beall
vs
Holmes

sufficient to carry a fee, if it was the intention of the testator to give one, but which intent does not clearly appear from the words themselves, then if there be an introductory clause, it may be resorted to, to explain their meaning; and if it manifests an intention in the testator, at the time of making his will, to dispose of the whole of his estate, the words in the subsequent operating clause, which otherwise would be of doubtful meaning, and consequently not sufficient to carry a fee, shall be taken in that sense which accords with his intention before expressed in the introductory clause, and will pass the inheritance, and thus effect will be given to all the parts of the will. So far have the *English* tribunals gone, and no further. For instance, (and it is put only as a single example,) if there be expressions in the residuary clause of a will, such as "testamentary estate," &c. which are applicable either to real or personal property, and are not restricted in the devise to the personalty, but may include both, and it would be *doubtful* on the residuary clause alone in what sense they were used by the testator; the introductory clause, if there be one, showing that he meant to dispose of the whole of his property, may be called in aid of the interpretation, and they shall be taken in the largest sense, so as to include the real property. Where the introductory clause of a will shows that the testator intended to dispose of the whole of his estate, the subsequent words will, if possible, be so construed as to pass the fee simple, in order to effectuate his intention not to die intestate as to any of his property; but they must be such words as would of themselves be in law sufficient to carry a fee, if used by the testator with that intent, the office of the introductory clause being only to show the intent with which they were used; and if no words can be found, out of the introductory clause, which the law considers sufficient to pass the fee, when used by a testator for that purpose, the rule of law, "that express words of limitation, or words tantamount, are necessary to pass an estate of inheritance," must prevail, and the devisee can only take an estate for life, no matter what conjecture or private opinion may be, which is no ground for a judicial determination; for the heir at law must inherit, unless the estate be given to somebody else by express words or necessary implication. A general devise of land, without words of limitation, or any other words being ad-

ded, imports in law an estate for life in the devisee; there, is nothing on which a judicial doubt can arise, but a strict and absolute legal certainty. In such a case, there being nothing open for construction and requiring explanation, it matters not what was the intention of the testator, having omitted to use apt words to effectuate that intention; and an introductory clause, showing that he had the whole of his estate in view when he made his will, being only a manifestation of what he intended to do, and not the operating clause, cannot of itself be sufficient to control a settled rule of law, and pass the fee simple.

In the case of *Cole vs. Rawlinson*, 1 *Salk.* 234, (1st *Ann.*) the words of the devise were, "I give, ratify and confirm, all my estate, right, title and interest, which I now have, or may have in my power to dispose of, after my death, in whatever I hold by lease from Sir *John Freeman*, and also the house called the *Bell Tavern*, to *John Billingsley*"—And it was held by three judges, against *Holt*, Ch. J. that being but one sentence, the preposition "in" related as well to the "*Bell Tavern*" as to the leasehold estate, and that the fee simple in the "*Bell Tavern*" passed to the devisee by force of the words "estate, right, title, and interest." *Holt* did not deny the sufficiency of the words "estate," &c. to pass a fee in a devise, but thought the preposition "in" related only to the leasehold property. In *Bridgewater vs. Bolton*, 1 *Salk.* 236. (2d *Ann.*) a fee was held to pass by the word "estate;" and per *Holt*, the word "estate" is *genus generalissimum*, and includes all things real and personal.

These cases are adverted to, not because they are supposed to have any immediate bearing upon that under consideration, but because they, and others which it is unnecessary to cite, serve to show how far back the word "estate" in a will was held to be sufficient to pass a fee; and will thus assist in the understanding of the grounds on which later cases have been decided.

In *Tanner vs. Wise*, 3 *P. Wms.* 294, there are the introductory words, "as to all my temporal estate with which it has pleased God to bless me, I dispose of the same as follows;" and then, after giving some pecuniary legacies, &c. follows this residuary clause, "all the rest of my estate, goods and chattels whatsoever, real and personal, I give to my beloved wife, whom I make my executrix;" and

it was decreed by Lord *Talbot*, that the devisee took an estate in fee simple in all the testator's real estate, on the ground that the words "temporal estate," in the introductory clause, signified the same as "worldly estate," or all that a man has in the world, and consequently took in both real and personal estate, and that the word *rest* being a relative term, it meant the rest of his "temporal estate." Thus resorting to the introductory clause to ascertain the sense in which the word "estate" was used by the testator, in the residuary devise; and as it appeared that he intended to dispose of all he had, the word "estate" was taken in its largest sense, so as to cover the real as well as the personal estate; the question being not as to the legal effect of the word "estate," but only whether the testator meant to apply it to his real property, leaving it (if he did so intend,) to its operation in law. In *Ibbetson vs. Beckwith, Cases temp. Talb.* 157, there is this introductory clause, "as touching my worldly estate, wherewith it has pleased God to bless me, I give, devise, and dispose of the same, in the manner following;" and then, after other devises, follows this: "*Item.* I give unto my loving mother, all my estate at *Norwith* Close, *North* Closes, and my farm held at *Roomer*, with all my goods and chattels as they now stand, for her natural life, and to my nephew *Thomas Dadson*, after her death, if he will but change his name to *Beckwith*," &c. The only question raised was on the effect of the word *estate*, which was held to pass the fee to *Thomas Dadson*.

The principle of that case is, that all the parts of a will ought to be taken together, and that where it appears from the introductory clause, that the testator intended to dispose of all he had, (as it did there,) if there are words in a subsequent devise which may carry a fee, they shall be considered as used by the testator with that intent, and will be held to pass the inheritance. With respect to the words "and my farm held at *Roomer*," no question appears to have been raised upon them, nor does it appear from the case, as reported, that that farm formed any part of the matter in dispute; no argument therefore can be drawn from the use of those words in that will.

In *Grayson vs. Atkinson*, 1 *Wilson's Rep.* 333, the introductory clause of the will is the same as in *Tanner vs. Wise*, 3 *P. Wms.* 294, "as to all my temporal estate where-

1824.

Beall
vs
Holmes

with it hath pleased God to bless me, I give and devise the same as follows;" and after several pecuniary legacies being given, with directions for "selling all or any part of the real and personal estate for the payment of debts and legacies," comes the residuary clause, in these words, "as to all the rest of my goods and chattels, real and personal, moveable and immoveable, as houses, gardens, tenements, &c. I give to the said A." Lord *Hardwicke* decided, that A took a fee; that the testator, by the words "as houses, gardens, tenements," &c. explained what he meant by the words "goods and chattels, real and personal, moveable and immoveable," which he said, without such explanation, would not have carried a fee; that from his directing all, or any part of his estate, to be sold for the payment of debts and legacies, it appeared he had it in view to dispose of the whole; that the words "as to all the rest," plainly related to something mentioned before, that he was about to dispose of, which was all his *temporal estate* mentioned in the introductory clause, and which was sufficient in law to pass a fee, when the testator had one.

The ground of the decision, therefore, was, that the words of the residuary clause meant all the rest of the testator's *temporal estate;* and the Lord Chancellor, by the expression to be found in his argument "for intention at first is one thing, and the execution of that intention is another," negatives the idea of an introductory clause, showing the intention of a testator to dispose of all he has, being alone sufficient to pass a fee, if there are no words in the devising clause that may in law carry it.

In *Frogmorton vs. Holyday,* 3 *Burrows,* 1618, after the introductory clause, "as for all my wordly affairs and estate, &c. I do dispose thereof in manner following," the testatrix devised an estate in fee to her eldest son, and then devised to her son *John* "all that house and garden in the tenure and occupation of *Edward Gibson,*" charged with an annuity payable out of the rents and profits, with a limitation over to her three daughters, if *John* should chance to die in his minority.

In construing this devise, the court took into consideration every part of the will, including the introductory clause, in order to ascertain what the testatrix meant by the devise over, and decided, that *John* took an estate in fee simple, not by force of the introductory clause, but by

reason of the limitation over, on the ground, that the in-
troductory clause, and the other parts of the will taken
together, showing clearly, that the testatrix did not intend
to die intestate as to any part of her estate; the limitation
over only upon the contingency of his dying during his
minority, proved that she meant the heirs at law should not
have it, and furnished the necessary implication, that she
intended to give to *John*, the devisee, an absolute estate in
fee, if he should attain his full age. It was the devise
over, therefore, that worked the effect of giving the in-
heritance to the devisee, and not the introductory clause;
and if there had been no such devise over, the rule of law
must have prevailed, for it was upon that, that the decision
turned.   The case of *Hogan vs. Jackson, Cowper*, 299,
turned upon the meaning of the word "effects" in the re-
siduary clause of the will, in which the testator gave to
his mother "all the remainder and residue of all the effects,
both real and personal, which he should die possessed of,"
and it was held by the court, that "effects" was synoni-
mous to property, that "real effects" meant real property,
and that real and personal effects were synonimous to sub-
stance, which included every thing that could be turned
into money, and consequently, that under the residuary
clause, the devisee took a fee in all the fee simple estates
of the testator. The introductory words, with all the
other parts of the will, were considered by the court, for the
purpose of ascertaining what the testator meant by the
word "effects," that is, to what description of property he
meant to apply it, whether to real or personal, or to both,
but no farther.   And Lord *Mansfield* said, "that intro-
ductory words could not vary the construction of a devise,
so as to enlarge the estate of a devisee, unless there were
words in the devise itself sufficient to carry the degree of
interest contended for."

In *Loveacres vs. Blight, Cowper*, 352, where the devise,
on which the question arose, was in these words, "*Item,
I give unto John Mudge* and *Robert Mudge*, my two sons,
&c. all and singular my lands and messuages, by them
freely to be possessed and enjoyed alike," the court rea-
soned from the introductory clause, and other parts of the
will, to show what was the intention of the testator; but
after stating "that though the introduction of a will, de-
claring that a man means to make a disposition of all his

worldly estate, is a strong circumstance, connected with other words, to explain the testator's intention of enlarging a particular estate, or of passing a fee where he has used no words of limitation, it will not do alone," decided, that the devisees took an estate in fee, on the ground, that by another clause the estate was charged with a life annuity to be paid by them; "on the principle, that where any thing is directed to be done, which, strictly speaking, an estate for life may not be sufficient to answer, the court will imply a fee."

The case of *Baker vs. Stocker*, 5 *Term Rep.* 13, was decided upon the same principle. After the words, "as touching all such temporal estate of lands, goods and chattels, as God hath endowed me with, I give and bequeath thereof as followeth," the testator devised to his grandson, *John Baker*, his dwelling-house, &c. paying yearly and every year, out of the said dwelling-house, the sum of 15s. unto his grand-daughter *A. Halstaff*;"—and the court, after declaring that the introductory words would not of themselves have carried the fee, ruled, that as the annuity was intended to continue during the life of the annuitant, the devisee must of necessity take an estate in fee.

In *Smith vs. Coffin*, 2 *Hen. Blk.* 444, the question arose upon the meaning of the word "testamentary" in the sweeping residuary clause of the will, in which the testator gave to his wife "all the rest and residue of his goods, chattels, rights and credits, personal and *testamentary estate* whatsoever, wheresoever, and in whose hands soever, not before particularly given and bequeathed"—It was a question entirely upon the construction of words; and in every such case the introductory clause may well be resorted to for assistance in the interpretation, not to control or vary their import in relation to the subject matter to which they are in fact applied, but to find out, if possible, to what description of property the testator intended to apply them; and if they are not exclusively applicable to personal property, but *may* include real property, and it appears from the introduction that the testator intended to dispose of his whole estate, it is evidence that he used them in their largest and most comprehensive sense, and they will be so taken, and be held to pass a fee, if they are sufficient in law to carry it, but not otherwise. And upon this principle the court proceeded in that case—they held, that the

word "testamentary" was as well applicable to real as to personal property, and as the introductory clause showed that the testator intended to dispose of all he had, they concluded that he meant to apply it to both; and being coupled with the word "estate," which, (when unrestricted by other words,) is *per se* sufficient to pass a fee, they ruled that the devisee took a fee simple in the premises in question under the residuary clause. The wills in the following cases, referred to in argument, have no introductory words to assist in the interpretation: In *Baddeley vs. Leppingwell,* 3 *Burrows,* 1533, it was decided, that the devisee took a fee simple under a general devise of lands to her, "she paying thereout forty shillings a year to her sister." The court took a view of the whole will, and drew the conclusion, from its different provisions, that the testator intended to dispose of the inheritance in the premises in question; but founded their judgment not on that general intent, but expressly on the ground that there was an annuity charged upon the property, for the life of the annuitant, which required a fee to support it, and that therefore the testator must have intended to give one.

In *Wigfall vs. Brydon,* 3 *Burrows,* 1895, the testator devised a house and stable, worth only one hundred pounds, first to her husband for life, then to her brother for life, and then *generally* to seven children, with directions if her brother should die before her husband, that they should be divided amongst the children. The plaintiff, who claimed as heir at law, was nonsuited, and the court said there was enough upon the whole will to show that the testatrix intended the value of the house and stable should be divided among the seven children, And in *Denn vs. Gaskin,* Cowper, 659, Lord *Mansfield,* who decided the case of *Wigfall vs. Brydon,* says, "the ground the court went upon in that case was, that from the nature of the estate, and the words used by the testatrix, they amounted in fact to a direction to sell the estate and divide the produce of it."

In *Goodright vs. Allin,* 2 *W. Blk.* 1041, the devisee was held to take an estate in fee on the two grounds expressly taken by the court—1st. That there was an annuity charged upon the property for the life of the annuitant, to be paid by the devisee, which required a fee to support it; and 2d. That the payment of the debts and le-

1824.

Beall
vs
Holmes

gacies were charged on the real, as well as the personal estate. The substance of the case of *Tofield vs. Tofield*, 11 *East*, 246, is, that where a testator calls his real property, personal property, and devises it by that description, it may pass.

In *Shell vs. Pattison*, 16 *East*, 221, the devise was of all the remainder of the testator's stocks, "with his freehold property," and the question turned upon the effect of the word "property"—the court held that it was synonymous to effects, which was in law sufficient in a will to pass a fee; that it was clearly used by the testator not as descriptive only of the thing, but of the quantum of his interest in it, and therefore decided that the fee passed to the devisee.

The principle contended for by the counsel for the appellant is, that whenever, from the introductory clause of a will, or any other parts of it, the mind can be satisfied that the testator had in view a disposition of the whole of his property, the fee simple shall pass, under a general devise of land, without any words of limitation, or any other words being added, which, when applied to real property, are in law sufficient to carry a fee. But not one of these cases goes the length of sustaining any such principle; neither of the wills, in the five last cases, had any prefatory words showing the object of the testator. The first, *Baddely vs. Leppingwell*, was decided on the ground that there was an annuity charged upon the estate for the life of the annuitants. *Wigfall vs. Byrdon*, on the ground that the devise amounted, in fact, to a direction to sell the property and divide the proceeds. *Goodright vs. Allen*, on the ground that there was an annuity for the life of the annuitant charged upon the property, to be paid by the devisee, and also that it was charged in the hands of the devisee with the payment of the debts and legacies. *Tofield vs. Tofield*, on the ground that the testator manifestly intended, by the words he used, to include his real property; and *Shell vs. Pattison*, on the ground that the word "property" is equivalent to the word "estate," and when applied to real estate sufficient *per se* to pass the fee. In the other class of cases, all the wills had introductory words, showing that the respective testators had in view the whole of their property, but in neither of them were introductory words held to be sufficient to give to a general devise,

1824.

Beall
vs
Holmes

without words of limitation, the effect to pass an estate in fee. But they were all decided on very different principles. *Tanner vs. Wise, Ibbetson vs. Beckwith,* and *Grayson vs. Atkinson,* on the ground that the word "estate," when applied to real property in a devise, and not used as a description only of the specific land, but denoting the quantum of interest or property that the testator has in the land devised, is of itself sufficient to carry a fee. *Frogmorton vs. Holyday,* on the ground that a devise to one *generally,* with a limitation over on the contingency *only* of his dying during his minority, gives a fee to the first devisee. *Hogan vs. Jackson,* on the ground that the word "effects" being synonymous to *substance* or *property,* when applied in a devise to *real estate,* is of itself sufficient to pass a fee. *Loveacres vs. Blight,* and *Baker vs. Stocker,* on the ground that a general devise of land charged with an annuity for the life of the annuitant, passes the fee. And *Smith vs. Coffin,* on the ground that the words "testamentary estate" being applicable as well to real as to personal estate, are, when applied in a devise to real property, sufficient to carry the fee. In *Tanner vs. Wise, Ibbetson vs. Beckwith, Grayson vs. Atkinson, Hogan vs. Jackson,* and *Smith vs. Coffin,* the prefatory words were taken into consideration, not because of any effect they were supposed to have in passing the fee, but as auxiliaries only, helping to show to *what* the respective testators intended to apply the operative words, in the devising clauses. And in *Frogmorton vs. Holyday, Loveacres vs. Blight,* and *Baker vs. Stocker,* only to strengthen the necessary implication arising in the first, from the limitation over, and in the two last, from the charge of a life annuity.

In *Frogmorton vs. Wright & Kershaw,* 3 *Wilson's Rep.* 414, and 2 *W. Blk.* 889, (the same case,) the prefatory words of the will were, "as touching the disposition of my temporal estate, as it hath pleased God Almighty to bestow upon me, I give and dispose thereof, as followeth:" and the particular devise upon which the question arose was in these words," *Item,* I give unto *William Wright,* my nephew, two houses, at *Seacroft,* with a croft and appurtenances belonging to them, now in the occupation of *John Carter* and *Elizabeth Thornton.*" There was also a bequest of five shillings a year to the testator's brother and heir at law. The judgment of the court was, that *Wil-*

*liam Wright*, the devisee, took only an estate of life; and the chief justice, *De Grey*, in delivering the opinion, said "it may seem probable, that the testator's intention was, that his nephew *William* should have a fee, but it is a clear rule that there must be express words, or a necessary implication to disinherit the heir at law; neither of these appear in the present case, and therefore the *legal* operation of the *words* of the will must govern."

In *Callow & others vs. Bolton*, 2 *W. Blk.* 1045, the testator gave all his real and personal estate to his wife for life, and then at or immediately after her death, devised to his son *Paul*, generally, "all that his land lying and being in *Dudley*;" and gave to his grandchildren, who were his heirs at law, five shillings each. The question was, whether *Paul* took an estate for life or in fee. And the court said, "there was nothing in the case to exempt it from the general rule of law, which declares, that a gift to a man of lands, without expressing for what estate, vests only an estate for life;" and therefore decided, that he took only a life estate. This case is cited in *Right vs. Sidebotham*, *Doug. Rep.* 759, and there the introductory words are stated to have been "as touching such worldly estate, wherewith it hath pleased God Almighty to bless me with."

In *Denn vs. Gaskin*, 2 *Coup.* 657, immediately after the words, "as to all such worldly estate as God has endued me with, I give and bequeath as follows," the testator devised "all that his freehold, messuage and tenement, lying in *Gaitsgill*, in the parish of *Dalston*, together with all houses, barns, orchards, edifices, and appurtenances whatsoever, reputed as part thereof, or belonging to the same, unto *Matthew Robinson*, *George Robinson* and *Thomas Robinson*, equally to them, my sister's sons." He then bequeathed ten shillings to his heir at law; and in the residuary clause bequeathed "all the rest of his goods, chattels, and personal estate whatsoever," without mentioning any real property, to *Matthew*, *George*, and *Thomas Robinson*. Lord *Mansfield*, and the other judges, declared their belief, and argued from the disinheriting legacy to the heir at law, and the bequest in the residuary clause of all the testator's personal property, without any notice being taken of any real estate, to show that he intended to give to *Matthew*, *George*, and *Thomas Robinson*, a fee simple in the premises devised to them; but said there were no *words* to

1824.

Beall
vs
Holmes.

be found in the will to take the case out of the rule of law, and decided that they took only an estate for life. *Aston,* Justice, cited the case of *Wright vs. Russel,* in which, after the preamble, "as touching the disposition of all such worldly estate, as it hath pleased God to bestow upon me, I give, &c," the testator devised a house to his grandson *Henry,* and after his decease, to his two sons *Thomas* and *William,* and then gave one shilling to the husband of the heir at law, and *Thomas* and *William* were held to take an estate for life; and Lord *Mansfield* added, that though the intention is ever so apparent, the heir at law must of course inherit, unless the estate is given to somebody else. This is a strong case, and cited and much relied upon as authority in some of the subsequent cases.

In *Right vs. Sidebotham, Douglas,* 759, the testator, after the words, "for those worldly goods and chattels, wherewith it has pleased Almighty God to bless me, I give and dispose in manner following," gave to his sister and heir at law one shilling; and after some other bequests, devised certain lands to his wife, her heirs and assigns, for ever, and added, and "I give and bequeath to my loving wife aforesaid, *all my lands, tenements and houses,* lying in the parish, &c. to wit, *the house I now live in,* with the *yard, garden and outhouses, and all other appurtenances thereunto belonging.*" The question was, what estate did the devisee take in the last mentioned premises? And it was adjudged, that she took only an estate for life. Lord *Mansfield* declaring he had no doubt that the testator's intention was to disinherit the heir at law, but that the rule of law was established and certain.

In *Child & Wife vs. Wright & others,* 8 *Term Rep.* 64, it appears that the testator had three grandsons, *James Wright, John Wright,* and *James Camper.* After the prefatory words, "as touching such worldly and personal estate wherewith it has pleased God to bless me in this life, I give, devise, and dispose of the same, in the following manner," he devised all his estate, real and personal, to his wife, for life, and after her death, devised to *James Wright* all his "lands," freehold, copyhold and leasehold, in the county of *Essex.* He also devised to *James* all his "estate," freehold and copyhold, lying in *Huntingdonshire.* To *John* he devised all his "estate," land, &c. called the *Coal Yard,* &c. and to *James Camper,* who was the heir

at law, he devised the house he lived in, together with other houses and lands by name.

The devise to the heir at law was general, without any words of limitation; that to *John Wright* had the word "estate;" the first devise to *James Wright* was general of his lands in *Essex*, without any words of limitation, and the second was of his "estate" in *Huntingdonshire*. The only difference between the two devises to *James Wright* was, that in one the word "lands" was used, and in the other the word "estate," and the question was, whether he took an estate in remainder, after the death of the widow, for life or in fee, in the lands in *Essex*, under the first devise? Indulging private conjecture, it would seem that the testator meant in each devise to give the same quantum of interest, without imagining any difference in the legal effect of the words "land" and "estate," but used them as synonymous terms, and that the devisee ought to take accordingly; and from the introductory clause it was manifest that the testator intended to dispose of the whole of his estate. But the word "land" denoting only the kind of property devised, and not the quantum of the testator's interest in it, and therefore not being sufficient in law to pass a fee, the court, bound by the established rule, decided that the devisee took only an estate for life.

In *Doe vs. Allen*, 8 *Term Rep.* 497, the introductory words of the will are, "as to what real and personal estate it has pleased Almighty God to bless me with, I give and dispose of the same as followeth;" and after some directions respecting payment of debts and funeral expenses, the testator devised all his messuages, lands, tenements and hereditaments whatsoever, situate, lying, &c. without any words of limitation, to *William Allen*, to whom, after some specific legacies to another, he also gave, in the residuary clause, all the rest of his personal estate, making no mention of any real property; and it was held, that *William Allen* took an estate for life only in the premises devised to him. The question in *Doe vs. Child & wife*, 4 *Bos. & Pull.* (1 *New Rep.*) 335, arose upon the same will and the same clause, (though for a different part of the property devised,) on which the question in *Child & wife vs. Wright & others*, 8 *Term Rep.* 64, was decided, and the same decision was made.

In *Doe vs. Clarke*, 5 *Bos. & Pull.* (2 *New Rep.*) 343, the

testator, after the words, "as to that wordly estate where-
with it hath pleased God in his kind providence to entrust
me, I dispose thereof in the following manner," devised to
his wife for life certain houses and appurtenances in *Swan
Lane,* and made a general devise, without any words of
limitation, of a part of the same premises to his son *Wil-
liam,* after the death of his wife; there were also general
devises of other real property, without words of limitation,
to the heir at law, and another remaining son. The ques-
tion upon that will was, whether *William* took an estate in
remainder in fee, or for life, after his mother's death, in the
premises so devised to him? And it was held, that he took
only a life estate. And in *Drewry vs. Barron,* 11 *East,*
220, Lord *Ellenborough* said, "they were tied down by a
positive rule of law, that in the devise of real property,
where there are no words of limitation, and no necessary
implication from the words of the devise to give a larger
estate, the devisee can only take an estate for life." In
that case, the testator, after the words "as touching such
wordly estate wherewith it has pleased God to bless me in
this life, I give, devise, and dispose of the same, in the
following manner and form," gave to his brother and his
heirs a cottage-house, and then devised to his wife "all and
singular his lands, messuages and tenements, by her freely
to be possessed and enjoyed," without any words of limi-
tation. The judges thought that it was the intention of
the testator to give to his widow an estate in fee, but be-
cause there were no words of limitation added to the de-
vise, determined that she took an estate for life.

In all these cases the introductory words, aided in some,
of them by disinheriting legacies to the heir at law, in
others by general devises without limitation, to the heir at
law, in one by the circumstance of the sweeping residuary
clause being confined to personalty, and in another by
both a similar residuary clause and a disinheriting legacy
to the heir at law, were made to yield to the rule of law;
and they go most clearly to show, that the rule is impera-
tive, and must prevail, where no words are to be found in
a devise to control it, or take the case out of it. The in-
tention of the testator is in every case to be consulted, and
must govern the construction of the will, when there is any
thing open to construction; but when the words of the de-
vise have a fixed and definite meaning, and import in law

an estate for life, the introductory clause, showing that he meant to dispose of all his property, cannot enlarge it to an estate in fee.

It has also been contended, in addition to the argument drawn from the prefatory words in this case, that the circumstance of there being a devise of lands to the eldest son and heir at law, and which, together with the devises to the other children, is of the same character with that in question, furnishes evidence that the testator intended to give an estate in fee to each, and that the residuary clause, containing only a bequest of personal property, proves that he supposed he had done so. But those circumstances, either alone, or when taken together, with an introductory clause manifesting the intention of the testator to make a disposition of the whole of his property, are not conceived to be sufficient to control the rule of law.

In *Child & wife vs. Wright & wife, Doe vs. Child & wife,* and *Doe vs. Clarke,* there were general devises of land, without words of limitation, to the respective heirs at law, as in this case, and in *Doe vs. Child & wife,* thought by Sir *James Mansfield* to be an imposing circumstance. In *Denn vs. Gaskin,* and *Doe vs. Allen,* there were sweeping residuary bequests of personal property only, as here, which in *Doe vs. Allen* was urged by counsel in argument as a strong circumstance. And in *Frogmorton vs. Wright, Callow & others vs. Bolton, Doe vs. Gaskin, Wright vs. Russell,* and *Wright vs. Sidebotham,* there were disinheriting legacies to the heirs at law, from which quite as strong an argument might be drawn as from a general devise to the heir at law, without words of limitation; and in each of the cases of *Wright vs. Russell, Child & wife vs. Wright & wife, Doe vs. Child & wife,* and *Doe vs. Allen,* there was the strong additional circumstance, that the devise in question was a limitation over, after an estate for life. Besides, it is apparent in this case that the testator could not have supposed that he had disposed of his entire interest in the whole of his property; because the devise to his wife of his dwelling plantation is expressly for life, and no disposition is made of the reversion. It would seem too, speaking from conjecture, that parts of two other tracts of land are not given to any body; for he devises to *Zephaniah Beall, part* of a tract of land called *Allison's Park,* and to *Sarah Beall* part of a tract of land called *Beall's Manor,*

without taking any notice in his will of the other part of either of those tracts:

These things, though they are not mentioned as governing the decision of this court, yet they certainly weaken the argument in favour of a fee, drawn from the supposed intention of the testator to dispose of the whole of his estate; and entirely negative the idea, that from the circumstance of the residuary clause containing only a bequest of personal property, he supposed he had before parted with all his interest in his real estate. Since it is manifest, on the face of the will, that he knew he had not disposed of the reversion in the dwelling plantation, having expressly given to his wife an estate for life only, in that tract of land, and hence the construction contended for, though it should prevail, would not gratify the supposed intention to dispose of the whole interest. The mistake here, has been in the application of the principle, that the intention of the testator shall prevail. It shall prevail in expounding words in a devise of dubious import, as to the subject matter to which they relate; as, if the question be, whether they include real property, or are applicable only as used to personalty, it shall prevail in determining the question, whether the words of the devise denote only the specific thing or land devised, or whether they denote the quantum of the testator's interest therein; it shall prevail whenever the testator makes use of words in the devise, sufficient in law to effectuate it, when the words of the devise may in law carry a fee.

The true and safe rule of construction is, that the whole of the will shall be taken together to find out what was the object and intention of the testator at the time of making it, which, where it clearly appears, (no matter how irregularly expressed,) ought to prevail, if when applied to the subject matter of the devise there are found apt or sufficient words in law to effectuate that intention.

The *Virginia* decisions, which are entitled to great respect, are the other way, there the principle has been differently applied, and the rule of law made to yield to the general intention of the testator, which has alone been held sufficient to carry a fee without any words in the devise, which in law would bear it. *Kennon vs. M'Roberts,* 1 *Wash. Rep.* 96, was not decided on that ground, the case having gone off on another point; but the court very

broadly expressed the opinion, that the word "estate," used in the introductory clause alone, might be transposed to the devising clause, so as to enlarge the interest devised, from a life estate, according to the legal import of the words of the devise, to an estate in fee. *Davis vs. Miller*, 1 *Call*, 127; *Watson vs. Powell*, 3 *Call*, 306; and *Wyatt vs. Sadler's heirs*, 1 *Munf.* 537, were all decided upon that principle; though in the first, the concluding words of the will, "this is my will and the way I desire my estate to be disposed of," were also taken notice of by the court. In the last case, however, of *Wyatt vs. Sadler's heirs*, not only were there no words of limitation in the devise, but the introductory words were, "as to what *worldly goods* it hath pleased God to give me, I leave and bequeath as follows:" neither the word "estate" nor any equivalent word being used; yet the devisee under a general devise of land, without any words of limitation, was *held to take a fee, thus giving*, under the supposed intention of the testator, an effect to words in the preamble, which if used in a devise in a will, without a preamble, would not have such an effect. But however great our deference for the tribunals of that and the other sister states, we cannot agree to unite with them in such a departure, (as we think,) from a long settled rule, which has become the law of the state. The same rule has been recognized and acted upon by the courts of *Pennsylvania*. In *Busby vs. Busby*, 1 *Dallas*, 226, the prefatory words of the will were, "as to what worldly estate I am blessed with, I dispose of as follows:" The testator then, after a devise of lands in fee to his son, devised certain other lands, without any words of limitation, to his wife. He then gave to his wife, in lieu of her dower, one third of such of his personal property as should remain after the payment of debts, legacies, and funeral expenses, and bequeathed the remaining two thirds to his son and his five daughters. The question was, as to what estate the wife took in the premises devised to her, and the court decided, on the authority of *Frogmorton vs. Wright*, that she took only an estate for life. In *Lambert's Lessee vs. Paine*, 3 *Cranch*, 97, there were no introductory words showing the intention of the testator, but the devise was immediate of "all the *estate* called *Marrowbone* in the county of *Henry*, containing," &c. "likewise one other *tract of land* in said

1824.

Beall
vs
Holmes

1824.

Beall
vs
Holmes

county called," &c. The question was, whether the devisee took an estate in fee or for life only, in the tract of land called *Marrowbone*, which depended upon the sense in which the word "estate" should be taken, whether descriptive only of the particular tract of land devised, or as denoting the quantum of the testator's interest in the land; which being entirely a question of construction upon words of dubious import *in a devise*, the whole will was examined by the court, for the purpose of ascertaining in what sense the word was used by the testator, that is, whether he used it as a word of description only, or to denote the quantum of his interest in the land; and the court being of opinion, that as there used, it was not descriptive only, of the particular tract of land devised, but denoted the quantum of the testator's interest, decided that the devisee took an estate in fee; and *Washington*, J. said, "that words which import nothing more than a specification of the thing devised, as all my lands, all my farms, and the like, have never been understood to pass more than an estate for life, even when aided by an introductory clause, declaring an intention to dispose of all his estate."

The case of *Lippett vs. Hopkins & others*, 1 *Gallison*, 454, did not turn at all upon the effect of the introductory words of the will, but *Lippett*, the devisee, was held to take a fee under his father's will, expressly upon the ground, that a devise to one generally, with a limitation over, *only* upon the contingency of his dying before he should attain the age of 21, gives an estate in fee to the first devisee, for which *Frogmorton vs. Holyday*, (*cum aliis*,) is referred to as authority; and the judge who decided the case, after stating the rule of law so often adverted to, said, "nor is it sufficient for the testator to express a general intention to dispose of all his property, to turn an estate, otherwise for life, to a more enlarged estate. For though general introductory words to this effect may sometimes aid in the construction of doubtful and obscure clauses, yet they are not permitted to supply material defects, or to convert a life estate into a fee."

We are not, however, without decisions by the courts of this state, and of this court, on which we think we may safely rest, and by which, we hold ourselves bound. In *Owings vs. Reynolds*, at December term, 1810, the will has these pre-

1824.

Beall
vs
Holmes

fatory words, "and as to *what* it has pleased God to bless me with, I dispose as follows," &c. and immediately following, the testator by a general devise, without limitation, &c. gave to his eldest son and heir at law *sixty acres of land*, part of a tract of land called *Taylor's Forrest.* He then devised the residue of that tract of land to his wife during her natural life, and after her death generally to his son *Lot Owings*, &c. and it was held, that *Lot* took only an estate for life. In that case, as in this, there was an introductory clause; in that case, as in this, there was a general devise without limitation to the heir at law; and in that case, as in this, there was an express estate for life given to the widow. Here there is a residuary clause, relating to personal property only, in that case there was no residuary clause, which furnishes as strong a presumption, that the testator supposed he had disposed of the whole of his estate, as can arise from a residuary clause of personalty only; and every argument in favour of a fee, that can be raised in this case, was equally applicable to that, with the additional circumstance, (among other things more strong,) that there, the devise to *Lot Owings* was a limitation over, after an estate for life; and the circumstance, that the word "estate," which is to be found in the preamble of this will, but was not used in the preamble to *Owings's* will, makes no manner of difference. In that case the expressions were, "as to *what* it has pleased God," &c. by which it is as clearly manifested, that the testator had the whole of his property in view, as if the word "estate" had been used, the word *what* having reference to every thing he had, and the will itself containing devises of real as well as bequests of personal property.

*Walters vs. Walters*, in this court, at June term 1811, was decided upon the same principle; the introductory words were "as for my worldly goods, which it hath pleased God to bless me with in this life, I give and dispose of in the following manner and form." After directing the payment of his debts and funeral charges, the testator made a general devise, without any limitation, of part of a tract of land, to one of his sons, and then made a similar devise of another part of the same land to his son *Benjamin Walters.* To the heir at law he devised certain lands for life, and all the other devises in the will were without words of limitation, &c. and it was ruled that *Benjamin Walters*

took only an estate for life. The residuary clause was held to be applicable to the personalty only; and *Chase*, Ch. J. in delivering the opinion of the court said, that the testator, in the introductory clause, manifested an intention to dispose of the whole of his estate. Which he clearly did, if that kind of introductory clause manifests any thing; for the first thing disposed of in the will, was part of a tract of land, which shows, that the words "worldly goods" were intended to be applied, as well to real as to personal property. And in *Tofield vs. Tofield*, 11 *East*, 246, it was decided, that where a testator calls his real estate, personal property, it may pass by that description. From these cases, that under consideration cannot in principle be distinguished. We are therefore of opinion, that *Robert Beall* and *Joseph Beall*, took a life estate only in the premises in question under the will of their father. *James Beall*; the devise to them being general without words of limitation, or any other words added, sufficient to carry a fee, but the expressions used, being such, as import in law an estate for life.

It may perhaps be safely assumed, that every man, when about to make his will, has the whole of his estate in view, and that the belief, often repeated by Lord *Mansfield* and other distinguished judges, "that in almost every case, where a general devise is restricted to an estate for life, the intention of the testator is defeated," is not without foundation, and yet they felt themselves bound by the rule of law. If the question here, was a mere question of intention, there would not be much difficulty in conjecturing what estate the testator meant to give; but the question is not what he intended to do, but what according to long settled principles of construction he did do. Perhaps it would be better if the rule were changed, and that in every case the fee should pass, unless *restrained* by words of limitation. But that can only regularly be effected by an act of legislation, with which we have nothing to do.

It is high time that the question involved in this case was set at rest, and this elaborate, and I fear tiresome examination of it, has been gone into, in order that it may now be finally settled.

JUDGMENT AFFIRMED.