GEORGE MAGRUDER, et al. vs. SARAH PETER, et al. LES-
SEE.—*June*, 1832.

A testator who was seized in fee, devised as follows : 1st. "The *proceeds* of all
my real estate shall be vested in my wife, for the maintenance and educa-
tion of my children. 2d. All my debts to be paid as speedily as possible, for
which purpose, I desire that the tract of land on which D lives, together
with all my personal property thereon, may be sold, and applied to that
purpose." 4th. "I desire in the general distribution of the *residue* of my
estate, in the division between my sons and daughters, my sons may receive,
in the proportion of five to three. The widow renounced the will. The
executors sold the tract mentioned in the 2d clause, and received a part
of the purchase money. The purchaser subsequently petitioned for relief
under the insolvent laws, and the balance of the purchase money being
unpaid, the widow and children, brought an ejectment for this land, each
counting upon an undivided interest. HELD, that the legal estate in the
lands mentioned in the 2d clause of the will, vested in the children of the
testator, as his heirs at law, liable to be divested, upon a legal sale of it
under the will, and a compliance with the terms of sale, and payment of
the purchase money.

The intention of a testator is to be collected from the will itself; and it is
perfectly clear, that the testator in this case did not intend his children
should take the land, on which D lived, as devisees.

A devise of the profits of land does not *ex vi termini* pass the land, but only
affords evidence, that it was the intention of the testator it should pass.
Where a different intention is manifest upon the face of the will, that
evidence is rebutted.

Where lands are devised to be sold for the payment of debts, and no person
is appointed to execute the trust, the practice is to apply to the Chancel-
lor under the act of 1785, *ch.* 72, to appoint a trustee for the purpose of
making the sale, and conveying the estate.

In ejectment, separate demises from several lessors may be laid in the de-
claration ; and the plaintiff at the trial may give in evidence, the separate
titles of the several lessors to separate parts of the premises in question,
and recover accordingly.

A plaintiff in ejectment may recover less than he declares for, but cannot
recover more ; and he may declare for less than he is entitled to, and re-
cover it, but it must consist of the same nature with that claimed.

Guardians who have the lands of infants intrusted to them, may make leases
to try titles ; but the privilege is not extended to those guardians, to whom
belong the custody of the infants alone.

When a plaintiff in ejectment relies on a lease made by a guardian, it is
necessary to prove at the trial, the legal appointment of the guardian, and
that the ward was under age when the lease was made.

APPEAL from *Montgomery* County Court.

*Ejectment* for sundry tracts of land in *Montgomery* County, on the separate demises of *Sarah Peter*, of one undivided third part; *James B. Beverly*, and *Jane* his wife, of one undivided seventh part; *Elizabeth Peter*, by *Sarah Peter*, her mother, guardian, and next friend, of one undivided seventh part; *William C. Peter*, by *Sarah Peter* his mother, guardian, and next friend, of five undivided equal twenty-one parts; the whole in twenty-one equal parts, to be divided, and on similar demises by *George H.* and *James Peter*.

The defendant pleaded *not guilty*, and issue was joined.

1. In the trial of this cause, the plaintiff proved that *David Peter* died seized in fee of the several tracts of land declared for, leaving a widow, the first named lessor of the plaintiff, and the other lessors of the plaintiff, who are his children. And then produced in evidence, the last will and testament of the said *David Peter*, dated 30th November, 1812, duly executed and recorded, in which among other devises, are the following, viz. 1st. "It is my intention, that the proceeds of all my estate shall be vested in my dear wife, *Sarah Peter*, for the maintenance and education of my children. 2d. I wish all my debts to be as speedily paid as possible, for which purpose I desire that the tract of land on which *Dolon* lives, together with all the personal property thereon, may be sold and applied to that purpose," &c. 4th. "I desire that in the general distribution of the residue of my estate, in the division between my sons and daughters, my sons may receive in the proportion of five as to three. I constitute and appoint my dear wife *Sarah Peter*, *Captain George Peter*, and *Leonard H. Johns*, my executrix and executors of this my last will and testament." *Sarah Peter*, the widow, renounced and quit claim to the bequests and devises contained in the will, and in lieu thereof elected to take her dower or one-third part of the real and personal estate of the deceased. The defendants thereupon offered in evidence, that the several tracts of land mentioned in the de-

claration, are the lands which, by the second clause of the will, are directed to be sold. They further proved, that the executors named in the will, made sale thereof on the 7th of June, 1813, and on the 14th of August, 1813, executed a bond of conveyance therefor, to *George Magruder*, in the penal sum of $41,375 80, stating, that the said lands had been sold by the executors at public auction, on the 7th of June, 1813, and *George Magruder*, being the highest bidder, the same was struck off to him at $10 12½ per acre, amounting in the whole to $20,687 90, the terms of sale being, one-third of the purchase to be paid on the 1st of January, 1814, one-third on the 1st on January, 1815, and the remaining third on the 1st of January, 1816, the two last payments to bear interest from the 1st of January, 1814, the purchaser giving negotiable notes, with approved endorsers, and to receive possession on the 1st of January, 1814. That the said *Magruder* had given negotiable notes, &c. The condition was, that the executors would put the said *Magruder* into peaceable possession of the premises, on the 1st of January, 1814, on the full and complete payment of the first abovementioned instalment; and should, before the payment of the whole, cause the lands to be surveyed, and deduct for deficiency, &c. The plaintiff thereupon proved that the defendant, *George Magruder*, entered on the lands under the said sale and agreement, having made the first payment mentioned in the bond, since when he hath made no further payments, (except a part of the interest,) and the balance of the purchase money remains due; and that the said defendant hath duly obtained the benefit of the insolvent laws, and hath transferred all his property to *George B. Magruder*, his trustee. Whereupon the defendants prayed the court to instruct the jury, that upon this evidence the plaintiff was not entitled to recover. But the court, (RIDGELY and KILGOUR, A. J.) refused to give said direction. The defendants excepted.

2. In addition to the facts stated in the first bill of exceptions, the defendants further proved, that letters testamen-

tary on the will of the said *David Peter*, were by the Orphans Court of *Montgomery* county, regularly granted to the persons named as executors in the will of the said *Peter*. They also proved, that the said executrix and executors proceeded to sell the lands named in the declaration, and in the directions of the testator; that the same was sold, and possession thereof delivered to the defendant *George Magruder*, who has ever since been in the possession thereof by himself, his agents or tenants. Whereupon the defendants, prayed the court to instruct the jury, that by the will of *David Peter*, the legal title of the lands of which he died seized, was, by the first clause of the said will, vested in *Sarah Peter*, for the maintenance and education of the testator's children, and said legal title was not in his children, and it is not competent for the plaintiff to recover a verdict for the same upon the demises alleged to have been made by the children; and also, that upon the fourth demise in the plaintiff's declaration, he is not entitled to recover five undivided twenty-one parts, the whole in twenty-one equal parts to be divided, of the premises in the declaration mentioned. Which instruction the court refused to give. The defendants excepted.

The verdict and judgment being for the plaintiff, on the demises by *Beverly* and wife, *Elizabeth*, *William C*, *George H*, and *James Peter*, the defendants prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., and EARLE, MARTIN, and ARCHER, J.

*B. S. Forrest*, and *A. C. Magruder*, for the appellants.

1. The plaintiff is not entitled to recover upon the demises of the mother, as guardian, and next friend of the children. 3 *Bac. Abr.* 414. *Zouch vs. Parsons*, 3 *Burr.* 1804, 1805, 1806. 2. The devise of the proceeds of all the testator's estate to his wife, for the maintenance and education of his children, vested in her a title to the lands. *Co. Litt.* 4. *b. Parker vs. Plummer, Cro. Eliz.* 190.

3. The land in controversy being directed to be sold for the payment of debts, did not pass under the 4th clause in the will, which directs in what proportion, each child shall take in the general distribution of the residue of testator's estate, but that they are entitled thereto, in equal proportions, and of course, the court erred in refusing to give the last instruction which was prayed.

*F. S. Key*, for the appellees.

1. The first clause in the will vested no legal title in the widow. 2. The lands directed to be sold, are excepted from the operation of the first clause of the will—no title vested in the heirs at law. 3. The 4th clause, about his sons and daughters, entitle them to take in the proportions specified, and applies to the land directed to be sold, as well as to the rest of the estate. If the sale produced more than the debts, the children would have been entitled to distribution of the surplus according to those proportions. If any of the land was left, after enough sold to pay the debts, it would have been held by the children in the proportions stated in the will. 4. The leases by the infants are good—such leases being *voidable* only, as appears by the case in *Zouch vs. Parsons*, 3 *Burr*. 1805, and 3 *Bac. Abr*. 598-9. The leases being stated to be made by the infants, by their mother, and guardian, would be sufficient, and she must be considered as the *actual guardian*, and not merely guardian by nature.

MARTIN, J., delivered the opinion of the court.

This action was instituted by the widow and children of *David Peter*, to recover the possession of the land mentioned in the declaration. (Here the Judge referred to the facts contained in the first bill of exceptions, *ante* 324-5.)

The declaration contains six counts—the first on the separate demise of *Sarah Peter*, the widow, for one undivided third part. The second, on the demise of *James B. Beverly*, and *Jane*, his wife, (who was a daughter of *David Peter*,) for one undivided seventh part, of the lands in the declara-

tion mentioned: the third by *Elizabeth Peter*, (another daughter of *David Peter*,) *by Sarah Peter, her mother, guardian and next friend*, for one undivided seventh part: the fourth, fifth and sixth, on the separate demises of *William C. Peter, George Hamilton Peter*, and *James Peter*, (the sons of *David Peter*,) by their mother, guardian and next friend, each for five undivided equal twenty-one parts, the whole into twenty-one equal parts to be divided.

The jury found for the defendant on the first count, and a general verdict for the plaintiff on all the other counts.

The first question that arises upon this statement, is the true construction of the will of *David Peter*, and the intention of the testator is to be collected from the will itself. By that instrument it appears the testator was in debt, and was desirous his debts should be speedily discharged, and in the second clause of the will he directs, " the land on which *Dolon* lives, and all the personal property thereon, should be sold, and the proceeds applied to that purpose." Having disposed of the land on which *Dolon* lived, he directs, "that in the general distribution of the *residue* of my estate, in the division between my sons and daughters, my sons may receive in the proportion of five as to three." It is perfectly clear, that the testator did not intend his children should take the land on which *Dolon* lived, as devisees under his will, because he devised that land for a specific purpose, and gives to his children, only the *residue* of his estate, that shall remain after this land shall be taken out of it—no other interpretation can be given to the word *residue*, and there is nothing else in the will to which it can be applied.

It has been contended, the legal estate in this land vested in *Sarah Peter*, under the first clause in the will, by which the testator declares, "it is my intention, that the proceeds of all my estate, shall be vested in my dear wife *Sarah Peter*, for the maintenance and education of my children;" and it has been said, that a devise of all the profits, or proceeds of land, is a devise of the land itself; because, where a

testator gives all the beneficial interests resulting from the land, it shall be presumed he meant to give the land. If this position is in general correct, it cannot govern this case. A devise of the profits of the land, does not *ex vi termini*, pass the land, but only affords evidence that it was the intention of the testator that it should pass. It cannot therefore apply, where a different intention is manifest on the face of the will. The intention of the testator in this case is not equivocal. It is clear and apparent, that the land mentioned in the second clause of the will, should be sold for the payment of his debts—that all the rest of his estate should be divided among his children, and the mother should be a trustee, to receive the proceeds to maintain and educate them—he never intended to vest the legal estate in the lands *directed to be sold,* either in his children or their mother.

It is to be observed, the second clause in the will directs the land to be sold, to pay the testator's debts, but no person is appointed to execute that trust, and if one had been named, the will gives him a mere *naked power* to sell.

When and where the legal estate shall rest, when lands are devised to be sold for the payment of debts, seems to be a question not yet finally settled. The law books appear to be at variance upon the subject. By some, a distinction is recognized, between a devise of lands to be sold by executors, and a devise that executors shall sell land, &c.; others say, no such distinction exists. *Vide 2 Thomas' Co. Litt.* 138, *notes* 1 *and m.* 3. *Co. Litt.* 25, *(b.)* *Sugden on Powers*, 102, 106, 108. *Toller on Executors*, 413, 414.

It is not necessary for us, in the decision of the case before us, to adopt either the one, or the other of those doctrines. It is said in *Sugden on Powers,* 167, "where a testator directs his estate to be sold, without declaring by whom the sale shall be made, if the fund be distributable by the executor, either for the payment of debts or legacies, he will take a power of sale, by implication. *Sug. on Pow.* 173, *note* 1. In *Maryland,* a different course has been gene-

rally pursued, founded perhaps on an act of the Assembly, passed in 1785, *ch.* 72, by the fourth section of which it is enacted, "if any person hath died or shall die, leaving real or personal estate, to be sold for the payment of debts, or other purposes, and shall not by will, or other instrument in writing, appoint a person or persons to sell or convey the said property, &c.—upon every such case, the chancellor shall have full power and authority, upon application on petition, from any person or persons interested in the sale of such property, to appoint such trustee or trustees, for the purpose of selling and conveying such property, and applying the money arising from the sale, to the purposes intended, as the chancellor shall in his discretion think proper."

The legal estate in the lands mentioned in the second clause of the will, vested in the children of *David Peter*, *as his heirs at law*, liable to be divested upon a legal sale of that land under the 2d clause of the will, a compliance with the terms of sale, and payment of the purchase money.

*David Peter* left five children, and each was entitled to one undivided fifth part of the land in controversy. The question is then presented, if the plaintiff was entitled to recover in this action?

The prayer in the first bill of exceptions being general, that the plaintiff was not entitled to recover, the court were correct in refusing to give the instruction to the jury, if he could recover on any one *count* in the declaration.

The second count is on the separate demise of *Beverly* and *wife*, for an undivided seventh part of all the land mentioned in the declaration. He was entitled, (in right of his wife,) to an undivided fifth part of the whole land—he therefore claims *less* than he was entitled to receive.

In ejectment, separate demises, from several lessors, may be laid in the declaration, and the plaintiff at the trial, may give in evidence the separate titles of the several lessors to separate parts of the premises in question, and recover ac-

cordingly. *Jackson vs. Lidey,* 12 *John. Rep.* 185. *Jackson vs. Sample,* 1 *John. Cases,* 231. *Adams on Ejectment,* 187. 6 *Com. Dig. (Am. Ed.)* 419.

A plaintiff in ejectment may recover *less* than he declares for, but cannot recover more: and he may declare for *less* than he is entitled to, and recover it; but it must consist of the same nature with that claimed. *Denn vs. Purvis,* 1 *Burr.* 326. 2 *Phil. Evid.* 170, 171. 2 *Stark. Evid.* 539. 2 *Hayw.* 150, 222. *Carroll vs. Norwood,* 5 *Harr. and John.* 174. *Benson vs. Musseter,* 7 *Harr. and John.* 208.

We think the plaintiff was entitled to recover, on the second count, and the court were correct in refusing the instruction to the jury, as prayed for by the defendant, in the first bill of exceptions.

The second bill of exceptions contains two prayers on the part of the defendant; first, that the plaintiff was not entitled to recover, because the legal estate was vested in *Sarah Peter;* and second, because he ought not to recover on the *fourth* count; those prayers the court also refused.

We have already expressed our opinion on the first prayer, as stated in this exception—that the legal estate did not vest in *Sarah Peter,* but in the children of *David Peter,* as his heirs at law, and thus far we concur with the court below, but we cannot agree with the court, that the plaintiff was entitled to recover on the fourth count.

In the argument of the cause, two objections are relied on by the counsel for the appellant, to this last opinion of the court. *First,* that the plaintiff has recovered *more* in this count, than *William C. Peter,* under whom he claims, was entitled to receive. *Second,* that the mother, *as guardian and next friend,* could not make a lease to try the title to this land.

The first of these objections is certainly fatal. From the authorities before referred to, the law will be found to be clearly settled, that although a plaintiff may declare for *less* than he can legally claim, he cannot declare for, and recover *more* than he is entitled to. *William C. Peter,* one of

the five heirs at law of his father, was entitled to one un-
divided fifth part of the lands in controversy—his lessee, or
the lessee of his guardian, has been permitted to recover
five undivided equal twenty-one parts, the whole in twen-
ty-one equal parts to be divided, which is equal to one-
fourth, and a small fraction of the whole lands claimed—this
is error, for which the judgment must be reversed.

It is not necessary to enter into a full examination of the
second objection, relied on by the counsel for the appellant,
that the plaintiff could not recover, on the lease made by
the mother, guardian and next friend of *William C. Peter.*
The law seems to be fully established that guardians who
have the lands of infants intrusted them, may make leases
to try title, but this privilege is not extended to those guar-
dians to whom belong the custody of the infants alone.   In
all cases where a plaintiff in ejectment relies on a lease
made by a guardian, it is necessary for him to prove at
the trial, the legal appointment of the guardian, and that the
ward was under age when the lease was made. *Adams
on Eject.* 68.   2 *Phil. Evid.* 101, 102.   2 *Stark. Evid.*
521.   2 *Selw.* 516.   It does not appear from this record,
that any evidence was offered to prove these facts.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.