DOE, on the demise of JOHN C. R. B. B. CHAMBER-
LAIN, SAMUEL BOONE and ELIZABETH P. BOONE,
his wife vs. ISRAEL OWINGS and SARAH, his wife,
MARGARET BURKE, WILLIAM BURKE, and others.

*Construction of a will.— What words in a Will
pass a Fee.*

No technical terms, no particular form of words in a will, are necessary
to create an estate in fee; but any words, sufficiently shewing the in-
tention of the testator to dispose of his whole interest in the thing
devised, will suffice.

Where the intention of a testator does not clearly appear from the words
used in a clause of his will which is to be construed, resort may be had
to the introductory clause, to explain their meaning.

The words "estate," "property," "all I have," "all I am worth;" "every
thing I die possessed of," "all and everything," used in a devise will
pass the fee—such intention being manifest from all parts of the will
taken together.

APPEAL from the Circuit Court for Baltimore County.

This was an action of *ejectment* brought on the 16th of
August, 1867, by the appellants to recover from the appel-
lees, certain real estate lying in Baltimore county. The
property in controversy formerly belonged to Thomas Boone,
who, by his last will and testament, dated the 6th of Decem-
ber, 1774, devised it to his son Richard; the testator died
somewhere between the date of his will and the 10th of
January, 1775. Richard, his son, died without issue, be-
tween the years 1780 and 1784, and this land descended to
John Cockey Robert Burley Boone, the eldest son of the
said Thomas, who died in February, 1824, leaving a last
will and testament, dated the 16th of June, 1777, the second
and third clauses of which were in these words, viz:

2d. "I give and bequeath to my son, Stephen Parlot
Boone, one silver watch, one-half of all my household stuff,
wagon and horses, and all cattle, together with all farming

utensils; likewise, one-half of all and everything that shall fall to me, the said John Cockey Robert Burley Boone, at my mother, Sarah Boone's decease, to him and his heirs forever.

3d. "I give unto my daughter, Eleanor Parlot Boone, one-half of all my household stuff, wagon and horses, and all cattle, together with all farming utensils; likewise, one-half of all and everything that shall fall to me, the said John Cockey Robert Burley Boone, at my mother, Sarah Boone's decease."

The land sought to be recovered in this action, is the same which was assigned to Eleanor Parlot Boone Burke, under a commission issued out of Baltimore County Court, and dated the 14th day of April, 1827, as claimed by her, as the portion of land devised to her by the name of Eleanor Parlot Boone, by the said John C. R. B. Boone.

John C. R. B. B. Chamberlain and Elizabeth Boone, (wife of Samuel Boone,) the lessors of the plaintiff, are the only children of Prudence Chamberlain, who was the only child of John C. R. B. Boone, by his marriage with Elizabeth Hale; the said Prudence was born before the date of the will of her father, and died during his lifetime, leaving her said two children her surviving. Elizabeth Boone survived her husband John C. R. B. Boone, but died before the year 1854.

The appellees, Sarah Owings, Margaret Burke, Mary Burke, and William Burke, are the children and some of the heirs of Eleanor P. B. Burke, who died in 1866, before the institution of this suit, and before the date of the several demises laid in the declaration.

Upon the facts in the case, the plaintiff prayed the Court to instruct the jury, that even if they find that the land devised to Richard Boone in the last will of Thomas Boone, his father, in evidence in this case, was part of the dwelling plantation of the said testator, and that the said Richard died before the making of the last will of John C. R. B. Boone, also in evidence, the devise in the said will of John C. R. B. Boone to Eleanor Parlot Boone, at the utmost gave but a life

estate, as to any land intended to be embraced therein to the said Eleanor, and the same expired at her death.

This instruction the Court (BATEMAN, J.,) refused to give, and the verdict and judgment being for the defendants, the plaintiff appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*Arthur W. Machen* and *Rich'd J. Gittings,* for the appellant:

The will in question, made *before the passage of the Act of* 1825, *ch.* 119, is governed by the Common Law rules of construction. One of the best settled of those rules is, that " express words of limitation, or words tantamount, are necessary in a devise to pass an estate of inheritance." " For the heir at law must inherit, unless the estate be given to somebody else by *express* words, or *necessary* implication." *Beall vs. Holmes,* 6 *H. & J.,* 210 ; *Dougherty, et. al. vs. Monett's Lessee,* 5 *G. & J.,* 459 ; *Moody vs. Elliott,* 1 *Md., Ch. Dec.,* 290 ; *Hammond vs. Hammond,* 8 *G. & J.,* 441 ; *Newton vs. Griffith,* 1 *H. & G.,* 111 ; *Glenn vs. Spry,* 5 *Md.,* 110, 117 ; *Ridgeley vs. Bond,* 18 *Md.,* 448 ; *Vansant vs. Money's Lessee,* 4 *H. & J.,* 313 ; *Edelen's Lessee vs. Smoot,* 2 *H. & G.,* 285 ; *Owings vs. Reynold's Lessee,* 3 *H. & J.,* 141.

The decisions in England have been not less strong than those in Maryland. Besides the cases considered in *Beall vs. Holmes,* see, amongst many other authorities which might be cited, *Doe d. Sams vs. Garlick,* 14 *M. & W.,* 698 ; *Harding vs. Roberts,* 10 *Exch.,* 819 ; *Doe d. Norris vs. Tucker,* 3 *B. & Ad.,* 473 ; *Sturgis vs. Dunn,* 19 *Beav.,* 135 ; *Lloyd vs. Jackson, Law Rep.,* 2 *Q. B.,* 269, *in Ex. Chamber, affirming S. C. Law Rep.,* 1 *Q. B.,* 571.

*Here,* whatever is given is denoted by the word " thing," which certainly points directly to the subject-matter, and is not at all expressive of the interest or estate of the testator in it. It is much less capable of being construed to import the

29                              v. 30

interest of the testator in the thing than the word "tenements," or the word "hereditaments," neither of which (as has been repeatedly held,) is capable of transmitting the fee. *Doe d. Small vs. Allen,* 8 *T. R.,* 497 ; *Bromitt vs. Moor,* 9 *Hare,* 374, 378. That the absence of words of perpetuity from the *devise* cannot be supplied by the words in the formal exordium, "as touching such worldly estate, &c," is conclusively shewn by *Beall vs. Holmes,* 6 *H. & J.,* 205. Such introductory clauses are generally mere forms adopted without any precise meaning being attached to them. *Owings vs. Reynolds,* 3 *H. & J.,* 143. Even the use of the word estate in a subsequent clause *referring* to the operative clause, will not avail. *Doe d. Burton vs. White,* 1 *Exch.,* 526, 535, *affd. in Ex. Chamb.,* 2 *Exch.,* 797.

Nor will a *recital in a codicil* that such devise was in tail or in fee, supply the omission of words of inheritance or perpetuity in the devise itself. *Re Arnold's Estate,* 33 *Beav.,* 163.

It is plain that no implication of an intent to pass a fee can be derived from the insertion of words of inheritance in the preceding devise to Stephen. On the contrary, the legal inference from the use of the words of inheritance in one instance, and omission of them in the other is, that a difference was intended by the testator. *Dougherty vs. Monett's Less.,* 5 *G. & J.,* 459 ; *Brown's Lessee vs. Brown,* 12 *Md.,* 91 ; *Morris vs. Lloyd,* 3 *H. & Colt.,* 141 ; *Mitchell vs. Mitchell,* 2 *Gill,* 236 ; *Compton vs. Compton,* 9 *East,* 267.

The evidence of an intent to make a distinction between Stephen and Eleanor in respect to the quantity of estate is so strong that it would seem that even had the will been made after the Act of 1825, ch. 119, an estate of inheritance would not have passed to Eleanor under it. *Boyle vs. Arnold,* 3 *Md., Ch. Dec.,* 42.

*J. Morrison Harris,* for the appellees :

The only question for the consideration of the Court is, to what estate was Eleanor Parlot Boone entitled under the will

of her father, John C. R. B. Boone? On behalf of the appellees it is insisted that she took a fee simple.

It is admitted that prior to the Act of 1825, ch. 119, a general devise of real estate, in which words of limitation or perpetuity were omitted, would not pass the testator's whole interest.

"It is an established rule of law, that express words of limitation, or *words tantamount*, are necessary in a devise to pass an estate of inheritance. But in the construction of a will, the *intention* expressed by the testator, to be collected from the *whole* instrument, by comparing and considering the different parts together, if it be consistent with the rules of law, in relation to the nature and operation of the estate devised, *must prevail*, giving effect, if possible, in the exposition to all the words of the will; and being supposed to be made when the testator is *in extremis* and *inops concilii*, it is not necessary that technical terms or any particular form of words should be used to convey his meaning. * * * Any other words which sufficiently show the *intention* of the testator to give to the devisee the *whole of his interest* in the thing devised, will have the same effect." *Beall vs. Holmes,* 6 *H. & J.,* 207; *Dougherty, et al. vs. Monett's Lessee,* 5 *G. & J.,* 461.

The words "estate" and "property," when used in a will, in a general sense, have commonly been held sufficient to embrace all the testator's property, real and personal. *Redfield on Wills, Part* II, 688, 692, 709, 713.

It will make no difference that the word "estate" is connected with words of locality, as "my estate," or "my estates," at or in a certain place, or "my estate of Ashton," or called by any other name, or "all that estate I bought of A," or "all my landed estate in W," &c. *Redfield on Wills, Part* II, 709; *Randall vs. Tuchin,* 6 *Taunt.,* 410; 2 *Jarman on Wills,* 134.

Similar forms of expression have been held to pass a fee, such as "all I am worth," "all the property I may die possessed of," and such like general terms. *Redfield on Wills, Part* II,

696, 713; *Huxtep vs. Brooman,* 1 *Brown C. C.,* 437; *Doe d. vs. Rout,* 7 *Taunton,* 78; *Davenport vs. Coltman,* 9 *M. & Wels.,* 481.

It seems to be settled that the devise of the testator's " moiety," " part," " share," of real estate will carry a fee if such was the testator's interest. And where an estate in fee is devised with the exception out of the same of one house, or any other portion by metes and bounds, or such specific description as to identify the same, which is given to another, in general terms, it will pass an estate in fee of the excepted portion. *Redfield on Wills,* Part II, 714, 715; *Doe d. vs. Lawton,* 4 *Bing., N. C.,* 455.

The word " *estate*" is held in the American Courts as a word of the greatest extension, and comprehends every species of property, real and personal, and will carry a fee *unless restrained.* It describes both the corpus and the extent of interest. The words " all I possess indoors and outdoors," will carry a·fee, and any other words which show such intent. *Redfield on Wills,* Part II, 728, 729; *Gall vs. Esdaile,* 8 *Bing.,* 323.

In 20 *Wendell,* 437, Senator LUTHER EDWARDS says: " No technical words are necessary, and if the testator make use of such expressions as plainly import his intention to cast the fee, it is sufficient."

When the terms of a devise are such as clearly to indicate the purpose of the testator to dispose of his whole interest in the property devised, the devisee will have *an estate in fee,* although there be no words of limitation; and such is especially the case where, in the introductory part of the will, the testator expresses the intention to dispose of *his estate,* using the word to denote the *quantum of interest* or property, and not as a mere *description* of the land devised. *Fox vs. Phillips,* 17 *Wendell,* 393; 2 *Preston on Estates,* 206.

From the authorities above referred to, it is evident that the words " estate" or " property," when used in a will, are sufficient to pass real estate and carry a fee—even though they

be connected with words of locality, as " my estate," or " my estate of Ashton." So will " all I am worth," " all the property I may die possessed of," " all I have," " everything else I die possessed of," " all I possess indoors and outdoors," and similar word or words of like import. Are not the words " all and everything" employed in the devise under construction, similar? Are they not of like import? Are they not as expressive, as extensive, as comprehensive as any of those terms? It is impossible to use stronger terms than those used in this devise. The other words in the clause do not affect the construction of the words " all and everything," for " all and everything that shall fall to me"    *    *    *    at my mother's    *    *    *    decease, are as effectual to carry all the property that would fall to him, as " all and everything" would carry all the property that he had, real or personal, fee-simple, or otherwise. Upon the case of *Beall vs. Holmes,* 6 *H. & J.,* 227, and the case of *Dougherty, et al. vs. Monett's Lessee,* 5 *G. & J.,* 459, the appellees rely, and are willing to abide the result. The case of *Burke & Fattle vs. Chamberlain's Lessee,* 22 *Md.,* 298, has construed the devise under consideration and sustains the view contended for by the appellees—that the devisee took an estate in fee-simple.

GRASON, J., delivered the opinion of the Court.

The question presented for the consideration of this Court upon this appeal, arises upon the construction of that clause in the will of John C. R. B. Boone, which is in the following words: " I give unto my daughter, Eleanor Parlot Boone, one-half of all my household stuff, wagon and horses, and all cattle, together with all farming utensils; likewise, one-half of all and everything that shall fall to me, the said John C. R. B. Boone, at my mother, Sarah Boone's decease." The question to be determined is whether Eleanor Parlot Boone took a fee or a life estate in one-half of that land which had been devised by the will of Thomas Boone, to his wife, Sarah Boone, for life. In construing wills, the intention of the

testator, to be gathered from the whole will, is to prevail, if that can be accomplished consistently with the rules of law. "The word *heirs* need not be used to create an estate in fee, nor any technical terms, nor any particular form of words; but any words sufficiently showing the intention of the testator to dispose of his whole interest in the thing devised, will have the same effect as a devise to one in *fee-simple or forever*, or any other words having the same import." *Dougherty, et al. vs. Monett's Lessee*, 5 *G. & J.*, 461. When the intention of the testator does not clearly appear from the words used in a clause of a will which is to be construed, then a resort may be had to the introductory clause, if there be one, to explain their meaning, and if, by it is manifested an intention upon the part of the testator, to dispose of the whole of his estate, the words in the clause to be construed, which otherwise would be of doubtful meaning, and consequently not sufficient to pass the fee, shall be taken in that sense which accords with the intention expressed in the introductory clause, and will pass the inheritance and give effect to all parts of the will. *Beall vs. Holmes*, 6 *H. & J.*, 210. Looking to the introductory clause of the will now under consideration, it is perfectly manifest that the testator intended to dispose of his whole estate, and to die intestate of no part of it. That clause is in the following words: "and as touching such worldly *estate* wherewith it hath pleased God to bless me in this life, I give, devise and dispose of the same in manner and form, following:" showing a clear intention to dispose of the whole of his estate. This being his intention, are the words used in the devise to Eleanor Parlot Boone, sufficient to pass the fee? It is well settled that the words "estate" and "property" used in a devise will carry the fee. *Beall vs. Holmes*, 6 *H. & J.*, 208, and the cases there cited. It has also been held that the words "all I have," "all I am worth," "everything I die possessed of," will pass the fee. *Huxtep vs. Brooman*, 1 *Brown's C. C.*, 437; *Davenport vs. Coltman*, 9 *M. & Wels.*, 481. Having the intention of

the testator plainly and clearly manifested in the introductory clause of the will, to dispose of his whole estate, the words "all and everything," are sufficient to pass the fee. They are of similar import, and as comprehensive as the expressions "all I have," "all I am worth," or "everything I may die possessed of." In the case of *Beall vs. Holmes, at page* 227, JUDGE BUCHANAN, who delivered the opinion of the Court, in reviewing the case of *Owings vs. Reynolds, in* 3 *H. & McH.,* says that in that case the expressions in the introductory clause were, "as to what it has pleased God to bless me with," by which, he says: "it is clearly manifested that the testator had the whole of his property in view, as if the word *estate* had been used; the word *what* having reference to everything he had, and the will itself containing devises of real as well as bequests of personal property." If the word "*what*" had reference to *everything,* the testator had, and was equivalent to the word "*estate,*" how can it be contended that the words "all and everything" are not equivalent to the word "estate?" The clause of the will now under consideration, devises to Eleanor Parlot Boone, "one-half of all and everything" that shall fall to the testator at the death of his mother, and the terms used are as effective to pass to her the fee in the one-half of the lands, which would fall to him at his mother's death, as if he had devised to her one-half of all the *estate* which would fall to him at his mother's death.

But it was contended that inasmuch as the devise to Stephen Parlot Boone, was to him and *his heirs,* it followed that the testator knew what terms were requisite to pass the fee, and therefore, that the omission of such terms in the devise to Eleanor, indicated an intention to give her but a life estate in the lands devised to her. In this view we cannot concur. Having shown that it was the manifest intention of the testator to dispose of his whole estate, and that he used words sufficient in law to pass the fee in his devise to Eleanor, and that it was his intention to give her the fee, the omission to use technical words of inheritance is to be attributed to the

want of skill in the testator or draftsman, and not to an intention to give her but a life estate; and this view of the case is strengthened by the fact that it very clearly appears from the will that Stephen and Eleanor, of whom he speaks as his " son " and " daughter," were the principal, and almost the sole objects of his bounty. In the case of *Burke and Fattle vs. Chamberlain*, 22 *Md.*, 310, Chief Justice BOWIE, in delivering the opinion of the Court, construed this particular clause of John C. R. B. Boone's will, so as to pass the fee to Eleanor Parlot Boone; and, although this clause of the will was not involved in that case, yet the views expressed upon it at that time commend themselves to the approval of this Court.

, Since that decision, it is too late to contend that the devises to Stephen and Eleanor do not pass real estate, that decision having determined otherwise.

From these views, it follows that the prayer of the appellant was properly rejected, and that the judgment of the Court below must be affirmed.

*Judgment affirmed.*

(Decided 14th April, 1869.)