# W. A. LYON
*vs.*
## SAFE DEPOSIT AND TRUST COMPANY.

### GRACE LYON ET AL.
*vs.*
#### SAME.

*Wills: interpretation; presumption against intestacy. Bequests*
*of securities in certain named vaults, etc.; bequests of*
*income of certain property; when does not*
*carry corpus of property.*

In general, where a party makes his will containing a residuary clause, it is presumed he does not intend to die intestate as to any part of his estate.                                   p. 525

But a will beginning with the clause, "after the payment of all my just debts and funeral expenses, I give, devise and bequeath my estate, as follows"—does not necessarily imply that the testator disposes of the whole of his estate; such a devise and bequest is qualified by the subsequent provisions of the will.                                             pp. 526-527

When the intention does not clearly appear from the words used in a clause of a will which is to be construed, resort may be had to the introductory clause, if there be one.
                                                          p. 521

If a testator devises or bequeaths property definitely and specifically mentioned, and adds no clause which is more comprehensive, there is no presumption that he intended to devise or bequeath other property not so mentioned or included.
                                                          p. 526

A testator by his will disposed of certain securities, etc., described as being in certain deposit boxes and vaults named in the will, without any residuary clause or any other direct attempt to dispose of the whole balance of his estate; the evidence considered as to what property and security, under such circumstances, should pass under that clause of the will.
                                                pp. 527, 530

In such a case, where one of the vaults were destroyed by fire after the execution of the will, it was *held*, that securities placed and kept in safes, which were used in lieu of the former vault, should be included in the property to pass by the will.                          pp. 530-531

In general, a devise in regard to rents, profits, interest or income of property passes the entire fund or estate absolutely, in the absence of a counter intention.                p. 531

A testator bequeathed to his sisters the income, etc., to be derived from the investments by the executors of certain moneys, securities and property, with authority to his sisters "to devise their interest in the income of the property * * * as they see fit"; *held*, that this devise carried only an equitable interest in the property mentioned out of which the income was derived, and that the executor should hold the property as trustee when his duties as executor should be completed, and pay over the income, less expenses, to the testator's sisters during their lives.                    p. 532

The trust for each sister terminated with her life, and such bequest is not void of indefiniteness.                p. 532

The duration of a trustee's estate is measured by the substantial objects and purposes of the trust, and not by the technical words used in creating it.                p. 533

*Decided April 11th, 1913.*

Two appeals in one record from Circuit Court No. 2 of Baltimore City (STUMP, J.).

The facts are stated in the opinion of the Court.

The two appeals were argued together before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George Whitelock* and *Alexander Preston,* for the first named appellant.

*William S. Thomas,* for the second named appellants.

No appearance for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The Safe Deposit and Trust Company of Baltimore, executor of the will of James Crawford Lyon, filed a bill against the next of kin, and heirs of the testator praying: (1) That a decree be passed construing the will and determining who are the parties entitled to receive the estate; (2) that jurisdiction over the settlement of the estate be assumed by the Court below, and that the settlement be completed by plaintiff under the supervision and direction of that Court. All of the defendants answered and from a decree passed appeals were taken by William A. Lyon, by Grace, Elizabeth L. and Mary A. Lyon, and by Mr. and Mrs. May, and Earnest Crawford May, but that of the Mays has been dismissed by them.

The entire will, with the exception of the formal beginning and ending and the appointment of the executor, is as follows:

"(1) After the payment of all my just debts and funeral expenses, I give, devise and bequeath my estate as follows: To my brother, William A. Lyon, $1,-000.00/100; to my sisters Elizabeth L. Lyon, Mary A. Lyon and Grace Lyon, three-fourths of the income, share and share alike, and to my mother Elizabeth

Lyon, one-fourth of the income for life, and at her death to my sister Virginia May, at present a resident of Pasadena, Cal., after her death to her heirs. If she should die without issue, the one-fourth interest devised to her to go to my surviving sisters, share and share alike.

(2) The income is to be derived from the investment by my executor, the Safe Deposit and Trust Co. of Baltimore, of my money deposited with the Maryland Trust Company—as shown by my account there— the securities belonging to me in a box in the vault of my firm, Lyon Bros. & Co., and boxes in the vault of the Maryland Trust Co., my interest in the firm of Lyon Bros. & Co., as may appear from the books; the rental of my tract of land at Herring Run, Baltimore County, Md., containing twenty-four acres, and the proceeds of my life insurance policies, which aggregate *thirty-two thousand five hundred dollars,* in the Mutual Life Insurance Co. of New York, Provident Life and Trust Co., Philadelphia, and Maryland Life Ins. Co., Baltimore.

(3) My securities in the boxes referred to exceed one hundred thousand dollars in value; my interest in the firm of Lyon Bros. & Co., July 1st, 1902, was by the balance sheet shown to be $48,715.76, and the land at Herring Run has been appraised at six thousand dollars.

(4) I do not leave my brother more than one thousand dollars, which is to be paid to him in cash in the settlement of my interest in the firm of Lyon Bros. & Co.

(5) My sisters are free to devise their interest in the income of the property disposed of under this will as they see fit."

Mrs. Elizabeth Lyon, the mother of the testator, predeceased him. Mrs. May has one child living, Earnest Crawford May, who is of age. Although not so appearing in the will we have for convenience of reference numbered the

paragraphs (1) to (5), inclusive. The will was executed in September, 1902, and the testator died on the 30th of January, 1912, without having married, and leaving his brother and four sisters as his next of kin and heirs. An inventory of the stocks and bonds, cash in the house, and in bank, and several trust companies, amounting to $167,366.94 was filed in the Orphans' Court of Baltimore City, and a list of debts due the deceased amounting to $196,909.70 was filed with the bill. The latter included $69,359.70 capital in the firm of Lyon Bros. & Co., per statement of December 31st, 1911. There was also an inventory of the real estate appraised at $6,000.00, filed with the Orphans' Court. The money deposited with the Maryland Trust Company at his death was $1,003.12, the securities in the vault of Lyon Bros. & Co., exclusive of checks hereinafter referred to, amounted to $14,247.00, those in three boxes in the vault of the Maryland Trust Co. $85,054.00, his interest in the firm $69,359.70, the land $6,000.00, and insurance policies $20,000.00, being a total of $195,663.82. The assets not included in the above classifications amounted to $185,599.92. These are the figures given in the record and although there may be some errors, for our purposes they are sufficiently accurate. The record shows that the insurance policies in the Mutual Life and Maryland Life Companies were paid to deceased in his lifetime, and the amount mentioned above was realized from his policies in the Provident Life & Trust Co.

The above figures when taken in connection with paragraph (2) will at once suggest the foundation for the controversy. The Court below decreed that by the true construction of the will William A. Lyon was entitled to a legacy of $1,000.00 and the three unmarried sisters were each entitled to a life estate (subject to the duties of the executor as to the holding and investing as therein stated) in one-fourth of the entire estate, after payment of debts, expenses and the legacy, with power to each to devise and bequeath by will the interest in remainder after her life estate in the share she takes for life, and in the event of any of them dying

without leaving a valid will the testator died intestate as to the remainder in any such share, and it will pass to all of the sisters and the brother; that as to the remaining fourth (the mother being dead) Virginia May is entitled to a life estate (subject to the duties of the executor, etc.) and that upon her death, if she dies without leaving a child or descendant, the remainder in such share will upon her death vest absolutely in such of her three sisters as may then be living, or if all die before her then to those entitled by reason of partial intestacy, but if she leaves surviving her a child or descendent the said share will vest in such child or descendent—the said Virginia not having power to will her share.   Directions are given the executor and some terms of the decree, we have not set out as they are not particularly involved in this controversy.   The will was written in the handwriting of the testator, excepting the formal beginning and ending which were printed—a blank form having been used.   It is dated the 16th day of September, 1902.

At the time of his death the testator had on deposit in the Union Trust Company of Maryland $44,085.81, in the First National Bank $4,143.91, in the Continental Trust Company $14,621.11, and in the Baltimore Trust Company $11,-252.08, making $74,102.91.   There were also checks payable to the order of the deceased and not cashed by him amounting to $10,232.10, and coupons due in his life time and not cashed by him amounting to $755.00, besides $10.91 found on his person.

*First.* We will first determine what property the will disposes of.   Paragraph 1 states: "After the payment of all my just debts and funeral expenses I give, devise and bequeath my estate as follows."   It is argued on behalf of the Misses Lyon that that indicates an intention of the testator to dispose of *all* of his estate.   That of itself, without any qualification in other parts of the will, might be conceded to be indicative of such intention, but it is qualified by subsequent provisions in the will which go on to say: "To my brother William A. Lyon, $1,000.00; to my sisters * * *

three-fourths *of the income* share and share alike and to my
mother Elizabeth Lyon one-fourth of the *income* for life, and
at her death to my sister Virginia May," etc.

Then after making some provisions for the fourth of the
income after Mrs. May's death, the testator went on to say:
*"The income is to be derived from* the investment by my
executor" of the money, securities, etc., set out in paragraph
(2). After stating in paragraph (3) the value of his "securi-
ties in the boxes referred to," his interest in the firm July
1st, 1902, which was the last six months period prior to the
making of his will, and of the land at Herring Run, and say-
ing in paragraph (4) that he did not leave his brother more
than $1,000.00, which was to be paid to him in the settle-
ment of his interest in the firm, he added paragraph (5):
"My sisters are free to devise their interests in the income
of *the property disposed of under this will* as they see fit."

Whatever meaning must be given to the expression "the
income" in determining whether the sisters took an absolute
estate or simply the revenue derived from the investment of
it, as we will later do, the property out of which the revenue
is to be derived, or which the sisters are to take absolutely,
is definately and specifically mentioned in paragraph (2).
If in paragraph (1) the testator had said: "To my sisters
* * * three-fourths of the income, and to my mother one-
fourth of the income for life * * * derived from the invest-
ment by my executor of my money deposited with the Mary-
land Trust Company," etc., etc.,—using the precise language
of the balance of paragraph (2)—could it be doubted that he
had limited the devise and bequest to them to the money,
securities and property therein mentioned? And yet is not
that what he in effect did? By paragraph (1) he left "the
income" as therein stated and by paragraph (2) he directed
from what property "the income" was to be derived. He
was undoubtedly speaking of the same "income" in both
paragraphs. Suppose immediately following the bequest to
his brother the will had read: "To my sisters Elizabeth,
Mary A. and Grace Lyon three-fourths, share and share

alike, and to my mother one-fourth for life, and at her death
to my sister, Virginia May, and after her death to her heirs
* * * of my money deposited with the Maryland Trust Com-
pany, as shown by my account there," and then continued
just as paragraph (2) reads, could it be said that he left any-
thing not included in the description thus specifically given?
We can not see how it could be seriously so contended, and
yet the description of the property is just as specific,—just
as inclusive and exclusive—in the will as he wrote it, as it
would have been in the case suggested.

The Misses Lyon rely on the beginning of paragraph (1)
as sufficient to include all of the testator's estate, but the
difficulty is that it is limited by the subsequent provisions.
In *Chamberlain* v. *Owings,* 30 Md. 447, cited in their brief,
the Court said: "When the intention of the testator does not
clearly appear from the words used in a clause of a will
which is to be construed, then a resort may be had to the
introductory clause, if there be one, to explain their mean-
ing, and if, by it is manifested an intention upon the part
of the testator to dispose of the whole of his estate, the words
in the clause to be construed, which otherwise would be of
doubtful meaning, and consequently not sufficient to pass the
fee, shall be taken in that sense which accords with the in-
tention, expressed in the introductory clause, and will pass
the inheritance and give effect to all parts of the will." That
is undoubtedly correct, although the rule has perhaps most
frequently been applied to such cases as *Chamberlain* v.
*Owings* where the question was whether the devisee took a
life estate or fee in the property devised. In *Beall* v. *Holmes,*
6 H. & J. 205, the case principally relied on in *Chamberlain*
v. *Owings,* CHIEF JUDGE BUCHANAN reviewed many cases
in his usual thorough and able manner, but concluded that
that introductory clause which was "As touching my worldly
estate wherewith it has pleased God to bless me in this life,
I give, devise and dispose of in the following form and man-
ner, viz:" did not authorize the Court to hold that the estate

there under consideration was in fee and held the devisee
took a life interest only.

In *Bourke* v. *Boone,* 94 Md. 472, we had occasion to pass
on several questions which have been raised in this case.  In
reference to the introductory clause in that will, which was,
"What property it hath pleased God to bless me with in this
life, I give and bequeath in manner and form following, to
wit," JUDGE PAGE said: "But it is well settled upon author-
ity, and in reason, that it is only when the intention of the
testator does not clearly appear from the words used in a
clause of the will to be construed, that resort may be had to
the introductory clause.  *Chamberlain* v. *Owings,* 30 Md.
447.  And even if these words would indicate an intention
not to die intestate, yet they would be ineffective to pass the
estate and thereby disinherit the heir, unless the will plainly,
or by necessary implication, directed to whom the estate
should go."  In that case the clause of the will in controversy
was: "I give and bequeath to my brother, John Linstid, all
of the land belonging to me; being my part which I obtained
from my father, and adjoining the lands of Thomas Robin-
son's heirs and James Stalling's heirs, to have and to hold
so long as he may live, and at his death, then the said land I
give and bequeath to my niece, Alice V. Boone, and her
heirs forever."  The will of the testatrix was made in 1875
and the same day her brother, John Linstid, made a will by
which he left her all the land on which he lived and some
personal property.  He died in 1880, and the testatrix died
in 1900, having in addition to the property she had at the
time of the execution of her will the real estate left her by
her brother.  She left as her heirs at law and next of kin four
nephews and one niece—the latter being the Alice V. Boone,
mentioned in her will.  The question was whether she died
intestate as to the tract of land which she took under the will
of her brother, or whether it passed to Alice V. Boone.

The Court, after quoting from *Rizer* v. *Perry,* 58 Md.
121, as to the effect of the statute making a will speak as of
the time of the death of the testator, and stating that it said

the effect of the decision in *Rea* v. *Twilley,* 35 Md. 409, "is to reassert the presumption in favor of the heir, and to restate the doctrine, that the intention is the main object of search in the construction of wills," went on to say: "We take it to be clear (notwithstanding anything in the statute) that what we must ascertain in this case, as in all others from the construction of wills, is to learn what the testator intended; such intention to be collected from her own words; and if we can not find she has given the estate to some one else, it must go to her heirs. *Zimmerman* v. *Hafer,* 81 Md. 357." And the Court concluded by saying: "Hence we think it clear from the terms of the will, when read in the light of the circumstances under which it was executed, or without such aid, that the testatrix intended to dispose of only such property as she specifically described, and that therefore the real estate devised to her by John Linstid does not pass under the will, and that she died intestate thereof." There was in that case an introductory clause certainly quite as strong as the one in this will, and the devise was "all the land belonging to me" which under the statute would ordinarily have included that belonging to her at the time of her death, yet inasmuch as she followed that up by saying "being my part which I obtained from my father," etc., the Court said: "We can not regard this as a general devise or equivalent thereto, for she proceeds to declare specifically and particularly what it is she intends shall pass."

In this case the testator only said: "To my sisters * * * three-fourths of the income," and then in the next paragraph, as soon as he provided for the other fourth of the income, proceeded to say specifically from what the income was to be derived. There was more reason for giving the introductory clause in *Bourke* v. *Boone* the effect contended for than there is in this case. The only provision in the will that can be said to place the Misses Lyon in a stronger position than Miss Boone was is the fact that the testator said he did not leave his brother more than $1,000.00, but that may be answered in several ways. In the first place, the next para-

graph (5), is "My sisters are free to devise their interest in the income of *the property disposed of under this will* as they see fit." That is very suggestive of a belief on the part of the testator that at his death he might have property which would not be disposed of under this will. Then in *Zimmerman* v. *Hafer,* 81 Md. 353, the testator, after giving as reasons for leaving all of his property to the devisee, that he had married his niece, that he had been living with them for many years, and had a high regard and affection for them, added: "and desire that they shall enjoy the same to the exclusion of my other relatives." JUDGE MCSHERRY said on page 357: "Nor is the appellant's contention strengthened by the expressed desire that the testator's other relatives should be excluded from participating in the distribution of his estate. And this is so, because, as said by LORD MANSFIELD in *Denn* v. *Gaskin,* 2 Cowper, 657, 'though the intention to disinherit the heir be ever so apparent, he must, of course, inherit, unless the estate is given to somebody else; and the reason is that the law provides how a man's estate at his death shall go, unless he, by his will, plainly directs that it shall be disposed of differently.' See *Coffman* v. *Heatnole,* 2 L. R. A. 848 and notes. An explicit and unequivocal declaration, therefore, that the heir shall not inherit will be wholly ineffectual to defeat his right, unless the estate be given by the will to some one else."

The case of *Cole* v. *Ensor,* 3 Md. 446, is also very applicable. The testatrix gave to her grandson "my negro girl Beck, together *with the rest and residue of my estate,* consisting of household furniture, cattle, horses, farming utensils, all and singular, of whatever kind, named or intended to be named," etc. At the time of her death she owned ten negro slaves, which were not particularly mentioned or referred to in the will. The Court said, if the clause "had terminated with the expression 'the rest and residue of my estate' it might doubtless have passed all the property owned by the testatrix at the time of her death, and which had not been specifically devised, but these words are qualified, and restricted by the

words immediately succeeding, namely, 'consisting of.' The effect of these last named words is to indicate that the testatrix intended to enumerate what she considered to be *the rest and residue of her estate,* and what she designed should pass under that general designation."

In *Gardner* v. *McNeal,* 117 Md. 27, the testatrix left to her brother, J. V. McNeal, her railroad stock and all money in bank excepting $300.00. When she made her will she had 12 shares of common stock and 60 shares of preferred stock of the Baltimore & Ohio Railroad Company. Before her death her brother as her agent sold the preferred stock and invested the proceeds of sale together with some money in bank in bonds of various corporations. It was held that the legacy of the common stock was valid and that of the preferred stock had been adeemed, and that the reinvestments which had been made could not be substituted as a specific legacy in favor of Joshua V. McNeal. JUDGE STOCKBRIDGE, in speaking for the Court, said: "The will of June 6th, 1905, did not contain any residuary clause and under the construction which we have felt compelled to put upon it, it necessarily follows that as to a considerable portion of her estate Mrs. Ellen M. Gardner died intestate. That she had no intent to die thus intestate is undoubtedly true * * * But that fact can not alter the legal result, and the balance of her estate after the payment of specific and demonstrative legacies is distributable to her brother, Joshua V. McNeal, and her half brother, James H. McNeal."

There is undoubtedly a presumption that when a party makes a will containing a residuary clause, or other language of similar import, he did not intend to die intestate as to any part of his estate. It is not accurate to say that there is always such presumption whenever a person makes a will, for it is by no means an unheard of thing for one to make a will for the purpose of disposing of some particular article or property and to leave the rest of his estate for distribution under the law. That is perhaps more frequent where wills of personal property are not required to be executed with the

same formalities as those of real property, as was the case in this State for so many years. The statement of the presumption has generally been used in the consideration of wills in which there was a residuary clause or something equivalent to it, or at least when property is referred to and the question has arisen as to what interest in it was devised or bequeathed. *Dulany* v. *Middleton,* 72 Md. 76; *Safe Deposit and Trust Co.* v. *Johnson,* 79 Md. 21; *Welsh* v. *Gist,* 101 Md. 606; *Lavender* v. *Rosenheim,* 110 Md. 153, and other cases might be cited. But if a testator devises or bequeaths property definitely and specifically mentioned, and adds no clause which is more comprehensive, there is no presumption that because he devised or bequeathed some property thus mentioned he intended to devise or bequeath other property not mentioned nor included. But even if he had such intention, if he did not so express it as the Court can ascertain it from the will and such surrounding circumstances as are permissible to be shown by evidence, it can not be carried out. The cases mentioned above and numerous others which could be cited show how frequently wills fail to dispose of all the property testators own, or all of the interest in their property.

So it seems to us clear from what appears in this will, and under the authorities applicable to it, that the testator only devised and bequeathed what is included in paragraph (2). Without basing our decision on it, or relying on it for the purpose of reaching a conclusion as to this branch of the case, as we do not deem it necessary to enter upon a discussion of just how far it would be safe to consider his subsequent conduct, the conduct of this testator tends at least to furnish additional evidence that our conclusion was not contrary to what he himself seemed to have in mind, if he be judged by what he did.

When the testator added paragraph (3) he did not say that his *estate* amounted to so much, as he would most likely have done if he had thought he was disposing of everything his will could take effect upon, but he said "my securities in the

boxes referred to exceed," etc., and then stated his interest in the firm and the appraisement of the land. A circumstance worthy of mention is that the securities found in the boxes in the vault of the Maryland Trust Company amounted to $85,054.00 (the figures given in the record seem to amount to $82,054.00, but the above sum is stated by the executor), that those in the vault of Lyon Bros. & Co., as given by the executor, amounted to $14,247.00, making in all $99,301.00. If we add the uncashed checks, payable to the order of the deceased which were apparently in the safe of Lyon Bros. & Co., and amounted to $10,232.10, we will have $109,-533.10 in the vaults of those two places named in the will. A note included in the securities found in the vault of the Maryland Trust Company is dated October 26th, 1908, and is for $14,000.00, and another in the vault of Lyon Bros. & Co. is dated October 6th, 1906, and is for $10,000.00, but there is a memorandum in the record that the latter was probably an extension of the one dated July 6th, 1903, for $10,-900.00. Inasmuch as the testator said in his will that "my securities in the boxes referred to exceed one hundred thousand dollars in value" it is a striking coincidence that he had in those boxes at the time of his death securities in the neighborhood of that sum—at least two of which amounting to $24,000.00 were placed in them after the will was made, and while there is nothing to show of what the securities in the boxes consisted when the will was made, it is a fair inference that the two notes were placed there in substitution for some securities paid off or at least taken out.

But that is not all, for we find from the evidence that on December 10th, 1906, he rented for the first time a box from the Union Trust Company—over four years after his will was made—and in that box, not in one of those he mentions in his will, there were found securities amounting to $97,-999.00. In addition to that he had on deposit in the Union Trust Company, the First National Bank, the Continental Trust Company and the Baltimore Trust Company (none of which are named in his will) $74,102.91. Presumably he

knew what he had said in his will, and when it is thus shown that he apparently maintained the amount of securities said in paragraph (3) to be in boxes referred to in paragraph (2) and he had not stated the amount of money deposited with the Maryland Trust Company, and he afterwards (in 1906) rented a box in the vault of the Union Trust Company where he placed securities of such a large amount and opened accounts with other trust companies and a bank in which he made large deposits, those are circumstances which, if they could properly be considered by us in determining whether they are included by paragraphs (2) and (3), would to say the least require some explanation. All of that evidence is is before us without objection, and in part at the instance of the Misses Lyon, but inasmuch as it might be dangerous to permit such acts of a testator after his will was executed to be used for the purpose of reflecting upon his intention, in the construction of his will, and inasmuch as we would perhaps be entering upon a new field, which would require an investigation and discussion of authorities which this opinion, already long, will not admit of, and particularly as we have reached the conclusion announced regardless of this point, we need not determine whether it could be properly taken into consideration, notwithstanding the evidence is in the record without objection.

*Second.* The property, money and securities shown by the record to be included by the will are as follows:

| | |
|---|---:|
| Amount deposited with the Maryland Trust Co. | $1,003.12 |
| Securities in vault of Lyon Bros. & Co. (including ten shares of B. & O. R. R. Co. common stock, 26 shares Missouri Pacific Ry. Co., 15 shares Maryland Trust Co., common, and 5 shares of some company, preferred and note for $10,000 of the Mays), valued at.......................... | 14,247.00 |
| Securities in the three boxes in the vault of the Maryland Trust Company (set out on pages 28 and 29 and also on pages 72-74 of the record) valued by executor at..... | 85,054.00 |

| | |
|---|---|
| Interest of deceased in the firm of Lyon Bros. & Co. as appears from the books.......... | 69,359.70 |
| Herring Run tract of land valued at........ | 6,000.00 |
| The three life insurance policies collected since testator's death...................... | 20,000.00 |

Making a total of............... $195,663.82

Whether or not the uncashed checks spoken of as found in the safe of the firm can be allowed, we can not determine from the record. If they were placed there as part of the securities to be kept in that safe, they can be allowed, but if they were simply left in the safe until convenient to collect them they should not be. Some of them were apparently for interest or dividends on securities which were not a part of those disposed of under the will. None such should be allowed, unless additional evidence shows that they were so placed in the safe of the firm as to come within the will as construed by us. We have not mentioned the note of Mr. and Mrs. May for $10,900.00 in this connection, as it is intimated that the one for $10,000.00 is a part renewal of it. If that can not be agreed upon, evidence can be taken and if found to be unpaid and still due, that can be added to the securities in the safe of the firm. Unpaid coupons or interest on the securities disposed of by the will go with them, but not the others, unless additional testimony shows they were so placed by the testator as to become a part of the securities, as decided by us. We are also of the opinion that the proceeds of the life insurance policies collected in the life time of the testator must be included, unless it be affirmatively shown that they are already invested in some of the securities included in the will. The testator said "the *proceeds* of my life insurance policies," mentioning the amount and the companies in which they were held. He must have known that some of the policies were payable in his life time. We think the case of *Littig* v. *Hance,* 81 Md. 416, is in point as to them.

Of course the amounts drawn out of the firm by the testator between the dates of his will and of his death can not be allowed. The will said "my interest in the firm of Lyon Bros. & Co. as may appear from the books." If there could be any possible doubt in the mind of any one that that did not include money drawn out of the firm in the testator's life time, paragraph (3) ought to remove it, as that shows what he meant by his interest in the firm. Nor can the money in the trust companies (other than in the Maryland) and in the First National Bank be included in what is disposed of by the will merely because those bank books were in the safe of the firm. Unless those books are different from ordinary bank books, they can in no sense be regarded as securities— especially as the testator himself in his will distinguished between money deposited and securities. Even in cases of savings institutions, which usually require the production of bank books or pass books when money is drawn, their possession is not conclusive of the ownership of the person in whose possession they may be found. *Murray* v. *Cannon,* 41 Md. 477; *Gorman* v. *Gorman,* 87 Md. 350. It would certainly be a most violent and unwarranted presumption to hold that because these books were in the safe of the firm it is to be presumed that he intended them to be securities within the meaning of paragraph (2). We have given a liberal construction to the term used in the will—"in a box in the vault of my firm, Lyon Bros. & Co."—in disposing of the securities, for the evidence does not show that they were actually in a box in the vault, but as it does show that the vault the firm had when the will was made was destroyed in the great fire of 1904, and they now have safes as substitutes, we have felt at liberty to go as far as we have gone on that question. We will only add on this branch of the case that by the use of the figures we have given we do not mean to determine that those particular amounts are correct, as there may be some errors, but we have used them for illustration so as to inform the parties what money, securities and property pass under the will, under our construction. As to those not so

included the deceased died intestate and the four sisters and the surviving brother will be entitled to them, share and share alike in the distribution of them.

*Third.* The general rule undoubtedly is that a devise or bequest of rents and profits, interest or income of property passes the entire fund or estate absolutely, in the absence of something showing a contrary intent. *Cassilly* v. *Meyer,* 4 Md. 1; *Cooke* v. *Husbands,* 11 Md. 506; *Johnson* v. *Safe Deposit & Trust Co.,* 79 Md. 18; *Ring* v. *Zimmerman,* 94 Md. 10; 40 *Cyc.* 1636; 30 *Am. & Eng. Ency. of Law* 715. It was said in *Cooke* v. *Husbands, supra,* that "This is generally the construction, but it does not obtain when the will shows a different intent, for the testator's intention, to be gathered from the whole will, must have effect," and in *Magruder* v. *Peter,* 4 G. & J. 323, is was said: "A devise of the profits of the land does not *ex vi termini* pass the land, but only affords evidence that it was the intention of the testator that it should pass. It can not therefore apply, where a different intention is manifest on the face of the will." In *Ring* v. *Zimmerman, supra,* CHIEF JUDGE MC-SHERRY said: "It must be remembered that this doctrine that a gift of the income is a gift of the thing out of which the income issues, is, by its explicit terms, applied to the interpretation of wills, only when it effectuates the testator's intention. If it be obvious that it was not his intention to give a life or other estate in the fund or property, then the gift of the income or rents will not be construed to be a gift of the subject out of which the income or rents issue." Those decisions are sufficient to show that even if it be the intention of the testator to give some interest in the corpus, it does not necessarily follow that he intended that it should be delivered to the devisee or legatee, and we think it is manifest that the testator did not intend that the corpus be turned over to his sisters, but on the contrary he said that the income that was derived from the investments by his executor of the money, securities and property mentioned in paragraph (2) be given them and then gave them authority "to devise their

interest in the income of the property disposed of under this will as they see fit." It is true he did not in so many words give them the income *for life,* but it is clear that he intended that they should have it, and he so indicated in paragraph (5) for he only undertook to give them authority to devise—not to dispose of it in any other way. He did not create a trust by such technical terms as are usual in creating trusts,—and he did not call the Safe Deposit & Trust Co. trustee, but he evidently intended that it should be and after its duties as executor are completed, it would in equity be so regarded. We are therefore of the opinion that he did not intend that anything more than an equitable interest in the property mentioned, out of which the income was to be derived, should be vested in the three sisters, and that the Safe Deposit & Trust Company must hold it as trustee when its duties as executor are completed, must invest it from time to time, in so far as it was uninvested, and pay over one-fourth of the income, after deducting proper and necessary expenses, to each of the three sisters during her life.

*Fourth.* But it is argued for William A. Lyon that the will only authorizes the three sisters "to devise their interests in the income," and that it really contemplated a trust of indefinite duration and hence was void under such cases as *Mission Society* v. *Humphreys,* 91 Md. 131, and *Brown* v. *Reeder,* 108 Md. 653, but while the testator did use that language, there is nothing in the will from which it can be said that he intended what we have spoken of as a trust to be continued beyond the lives of his respective sisters—there being no gift over after their death, or anything to indicate that the trustee should hold the property beyond that time. As was said in *Phelps Equity,* sec. 198, "the duration of a trustee's estate is measured by the substantial objects and purposes of the trust, and not by the technical form of the words creating it." Upon the death of either of the three sisters, the trust as to the fourth of the property out of which the income payable to her is derived will terminate and be payable to the person or persons entitled to it, and so on with

each of the others. The real meaning of the testator evidently was to provide an income for these sisters during their lives with the power to "devise" the property out of which the income was to be derived, as paragraphs (1), (2) and (5) when taken together indicate. Upon the failure of any one or more of them to leave the fourth by will, it will pass to the heirs and next of kin of the testator. The construction we have placed on the will under the first branch of this opinion strengthens this view.

*Fifth.* The income of one-fourth of the investments of property included in paragraph (2) is to be paid to Mrs. May by the trustees during her life, and at her death to her issue, if she leaves issue, and if not to her surviving sisters, share and share alike, but if all of them die before her then to the next of kin or heirs of the testator, as the case may be.

*Sixth.* The $1,000 left to William A. Lyon is payable to him in cash by the executor in the settlement of the testator's interest in the firm of Lyon Bros. & Co.

It follows that the decree will be reversed in part and affirmed in part, and the cause remanded in order that a new decree be passed in accordance with this opinion.

> *Decree reversed in part and affirmed in part and cause remanded, the costs to be paid out of the estate in the hands of the executor.*